E-FILED
Friday, 28 July, 2006  03:41:42 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DENISE N. MOLDENHAUER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 04-CV-1169 |
| | ) |
| TAZEWELL-PEKIN CONSOLIDATED COMMUNICATIONS CENTER; CITY OF PEKIN; TAZEWELL COUNTY; STEVEN F. THOMPSON; DAVID TEBBEN; JAMES UNSICKER, ROBERT HUSTON; and TIMOTHY GILLESPIE, | ) |
| | ) |
| Defendants. | ) |

### RESPONSE TO PLAINTIFF'S MOTION FOR WITHDRAWAL OR AMENDMENT OF ANY ADMISSION BY OPERATION OF LAW

NOW COMES the DEFENDANTS, TAZEWELL-PEKIN CONSOLIDATED COMMUNICATIONS CENTER; TAZEWELL COUNTY; STEVEN F. THOMPSON, JAMES UNSICKER, and ROBERT HUSTON, by its attorneys, MILLER, HALL, & TRIGGS, and responds to Plaintiff's motion as follows:

1.  The defendants oppose the Motion for Withdrawal or Amendment Of Any Admission By Operation of Law.

2.  Plaintiff's Withdrawal Motion cites "excusable neglect" as a basis for their failure to respond to the three-hundred and eight (308) statements in defendant's Request for Admissions filing. Nothing in the motion however, cites facts sufficient to qualify as excusable. Even if the Court finds that "excusable neglect" is a legitimate basis for not timely responding, it nonetheless could not, and does not excuse the

plaintiff for filing objections to many of the request statements without any "reasonable inquiry".

3. As stated in the defendant's initial Motion to Have Facts Deemed Admitted, even if the Court in its discretion were to allow the late Response, Plaintiff's initial Response to Request for Admissions does not comply with Fed. R. Civ. P. 36(a). It fails to specify that Plaintiff made a "reasonable inquiry" as to objections made for lack of personal knowledge, nor does it state Plaintiff "neither admits or denies the facts for that reason". Nearly half of Defendant's Request To Admit were denied by Plaintiff on the grounds that each "would be beyond her knowledge, information or belief," without indicating Plaintiff made any reasonable inquiry as the factual matters requested. With all the objected questions, the Plaintiff failed to indicate she made a reasonable inquiry; therefore, the matters are deemed admitted for noncompliance with Fed. R. Civ. P. 36(a).

4. In Plaintiff Moldenhauer's sworn deposition testimony from May 1, 2006, she was questioned about the "procedures (at TPCCC) that you were informed of as to what you were to do when you were scheduled to work, and you anticipated not being able to attend as scheduled?". The following is a serious of questions that plaintiff Moldenhauer answered during her deposition regarding her knowledge of the TAZCOMM "call in sick " procedures:

Q. What procedures were you informed of as to what you were to do when you were scheduled to work, and you anticipated not being able to attend as scheduled?

A. You would call in before your shift as soon as possible to let them know.

Q. Okay. And how were you supposed to call in?

A. By phone.

Q. To whom?

A. To the person in charge of the shift.

Q. And were there any rules or standard operating procedures in effect during your employment between 1999 and 2003 with respect to what you were instructed to do?

A. I believe you're asking, I was to call in as soon as possible, give them the reason I was going to miss work.

Q. Uh-huh.

A. And then if you were gone more than two days, you brought a doctor's excuse. Is that what you want?

Q. Okay. I'm just trying to find out what your recollection is as to the procedure.

A. I want to make sure I understand.

Q. And you say you talked to the shift supervisor. That would be another telecommunicator in the Dispatch Center?

A. Yes.

Q. And they would be another member of the bargaining unit, correct?

A. Yes.

Q. And did they have instructions to record the information that the person calling in received?

A. There was a card they filled out.

Q. Okay. Now, do you recall being absent 25 different days in 2001?

A. I don't recall the dates.

Q. Have you reviewed your attendance calendars prior to today's deposition?

A. Yes.

3

Q. Since your dismissal in 2003?

A. Yes, sir.

Q. Okay. And did the attendance calendars accurately reflect to your knowledge the days on which you were not in attendance at work when scheduled?

A. They reflect the days I was not in attendance but not – they do not reflect they were all sick days.

Q. Okay. And have you also reviewed the absence cards that were filled out when you reported off for work during the period of 2001 through 2003?

A. No, I have not those.

Q. When you were working and someone called in, did you ever take the information down for that person and record it on the card indicating that they were absent?

A. Yes.

Q. And what were the instructions provided to you as dispatcher in doing that?

A. It was the day and time, the person's name, the person that called in, what their problem was, and you signed it and put it in for your supervisor in their box.

Q. And were there specific instructions that you were directed to ask the specific reason that they were calling in to be absent?

A. Yes.

Q. And were the specific directions that you were to record what you were told?

A. Yes.

5. It is clear from reading Ms. Moldenhauer's deposition testimony that she had a complete understanding of the TPCCC "call in sick" procedures. Moldenhauer's testimony contradicts her stated opinion, as illustrated in her Withdrawal Motion and in her Response Motion that it was "impossible to make a reasonable inquiry to determine

4

what Thompson was told". This statement conflicts with Moldenhauer's stated understanding of the "sick cards" and the "call in sick" policy. After reviewing her deposition testimony, it is clearly evident that Moldenhauer understood, had personal knowledge and could have made a "reasonable inquiry" into the Admission Requests. However, Moldenhauer simply issued a blanket objection to approximately 140 requests.

6.    In paragraph eight (8) of Plaintiff's Response To Motion To Have Facts Deemed Admitted, the Plaintiff states that the "internal records of TazCom, or what Steve Thomson claims was told to him is not relevant to issues in this litigation". Respondents wholeheartedly disagree with this statement. The heart of this case is whether Moldenhauer's alleged "sickness" and numerous "absences and sick days" qualify for Family and Medical Leave Act (FMLA) protection. The circumstances and specifics related to Moldenhauer's absences and sick days are essential to the determination of whether she was entitled to FMLA protection. To claim that the internal records of TAZCOMM, as they relate to Moldenhauer's sick days, are "not relevant to the litigation" is without merit. Moreover, the U.S. Court of Appeals for the Seventh Circuit on June 12, 2006, affirmed the dismissal of an employee's FMLA lawsuit, ruling that the employee's reports to her employer that she was "sick", and had consulted a physician, and that she would be unable to work for three days, were too vague to alert the company that her absences qualified for FMLA protection. *Phillips v. Quebecor World RAI Inc.*, 11 WH Cases2d 900, 7th Cir., No. 05-3744, 6/12/06.

**WHEREFORE,** the defendant prays that the Court enter an order denying Plaintiff's Motion for Withdrawal or Amendment of Any Admission By Operation of Law and for any further relief the Court deems proper.

        TAZEWELL-PEKIN CONSOLIDATED
        COMMUNICATIONS CENTER; TAZEWELL
        COUNTY, ILLINOIS; STEVEN F. THOMPSON,
        JAMES UNSICKER and ROBERT HUSTON,
        Defendants

        By   /s/ Darin M. LaHood
                Darin M. LaHood
                For Miller, Hall & Triggs

Patrick A. Murphey
Darin M. LaHood
Miller, Hall & Triggs
416 Main Street, Suite 1125
Peoria, IL 61602-1161
(309) 671-9600