## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DENISE N. MOLDENHAUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 04-CV-1169 |
| TAZEWELL-PEKIN CONSOLIDATED | ) | |
| COMMUNICATIONS CENTER, | ) | |
| TAZEWELL COUNTY, CITY OF PEKIN, | ) | |
| DAVID TEBBEN, TIMOTHY GILLESPIE, | ) | |
| STEVEN F. THOMPSON, JAMES | ) | |
| UNSICKER, ROBERT HUSTON | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, CITY OF PEKIN, DAVID TEBBEN, and TIMOTHY

GILLESPIE, by their attorney, BRADFORD B. INGRAM and JOHN K. KIM of HEYL,

ROYSTER, VOELKER & ALLEN, P.C., and for their Motion for Summary Judgment pursuant to

Federal Rules of Civil Procedure Rule 56 and Local Rule 7.1(D) of the Rules of the Central District

of Illinois, states as follows:

### INTRODUCTION

On May 26, 2004, Plaintiff Denise Moldenhauer filed *pro se* complaints alleging violations

of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and Family Medical

Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* After Plaintiff retained counsel, the Court

consolidated the actions and allowed Plaintiff to file her First Amended Complaint on September 8,

2004. (Ex. A.) Plaintiff's Count I alleged that Tazewell-Pekin Combined Consolidated

Communications Center ("TPCCC"), City of Pekin, ("City") and Tazewell County violated the ADA

in firing her on April 18, 2003, due to absences related to her disabling condition, chronic pancreatitis.

Plaintiff complained in Count II that TPCCC, the City, Tazewell County, David Tebben ("Mayor

HEYL ROYSTER
VOELKER
& ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

Tebben"), Timothy Gillespie ("Chief Gillespie"), James Unsicker, and Robert Huston violated the FMLA by denying her alleged request for FMLA on or about May 24, 2002.

On April 18, 2005, the Court denied and granted-in-part Defendants' Motions to Dismiss. (Ex. D.) On April 27, 2005, Plaintiff filed a Second Amended Complaint, which realleged in its entirety Counts I and II from her First Amended Complaint, and added Count III, which alleged that all Defendants retaliated against her under the ADA and FMLA by firing her for filing charges and that no other similarly situated employees faced similar adverse employment action. (Ex. B.)

As a matter of law, neither the City, Mayor Tebben, nor Chief Gillespie were Plaintiff's employer as they did not exercise any control over Plaintiff's employment. Plaintiff also did not have a disability as defined by the ADA. Further, as a matter of law, Mayor Tebben and Chief Gillespie cannot be held individually liable for any of Plaintiff's allegations. On these grounds, Defendants respectfully request summary judgment on all counts on the basis that Plaintiff cannot establish a cause of action under either the ADA or FMLA as a matter of law.

## SUPPORTING EXHIBITS

1.    Plaintiff's First Amended Complaint (Exhibit A).

2.    Plaintiff's Second Amended Complaint (Exhibit B).

3.    Defendants' Answer to Second Amended Complaint (Exhibit C).

4.    Order of the Court, dated April 18, 2005 (Exhibit D).

5.    Plaintiff's deposition transcript (Exhibit E).

6.    Mayor David Tebben's deposition transcript (Exhibit F).

7.    Chief Gillespie's deposition transcript (Exhibit G).

8.    Steven Thompson's ("TPCCC Director") deposition transcript (Exhibit H).

9.    Tammy Conover's ("Operations Supervisor") deposition transcript (Exhibit I).

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

2

10.    Robert Huston's deposition transcript (Exhibit J).

11.    James Unsicker's deposition transcript (Exhibit K).

12.    TPCCC Joint Public Safety Communications System Agreement and Corporate By-Laws (Group Exhibit L).

13.    Plaintiff's Attendance Calendars from 1999-2003 (Exhibit M).

14.    Plaintiff's Sick Time Cards from 2001-2003 (Group Exhibit N).

15.    Memorandum from Steven Thompson to TPCCC Board, dated March 26, 2003 (Exhibit O).

16.    Memorandum from Steven Thompson to Plaintiff, dated April 26, 2002 (Exhibit P).

17.    Memorandum from Steven Thompson to Plaintiff, dated May 16, 2002 (Exhibit Q).

18.    Memorandum from Steven Thompson to Plaintiff, dated November, 6, 2002 (Exhibit R).

19.    Memorandum from Steven Thompson to Plaintiff, dated January 16, 2003 (Exhibit S).

20.    Letter of Termination from Steven Thompson to Plaintiff, dated April 24, 2003 (Exhibit T).

21.    Plaintiff's Charge of Discrimination, U.S. Equal Employment Opportunity Commission ("EEOC"), dated August 18, 2003 (Exhibit U).

22.    Collective Bargaining Agreement between TPCCC and Illinois Fraternal Order of Police Labor Council Representing TPCCC, Tazewell County FOP Lodge # 98, effective May 1, 1999 through April 30, 2002. (Ex. V.)

## UNDISPUTED MATERIAL FACTS

### *TPCCC Organization and Operations*

1.    In July 1976, the City and Tazewell County entered into an intergovernmental agreement establishing TPCCC, an Illinois not-for-profit corporation. (Ex. L.) Under its by-laws, the City, Tazewell County, and other local government units or other public entities near Tazewell County could contract with TPCCC for services. (Ex. L.) TPCCC has a Board of Directors consisting of the Mayor of Pekin, the Chairman of the Tazewell County Board, the Sheriff of Tazewell County, and the Pekin Chief of Police.  (Ex. L.)

2.    TPCCC provides dispatching services to 37 different agencies on a contract basis, and City and Tazewell County are the largest users. These 37 agencies provide funding to TPCCC by paying TPCCC for its dispatching services.  (Ex. G at p. 25; Ex. H at p. 57; Ex. K at p. 45.)

**HEYL ROYSTER**
**VOELKER**
**& ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

3

3.   TPCCC has its own operating budget, which includes line items for personnel salaries, operational costs, supplies, building maintenance, and supplies. (Ex. G at p. 24.)

4.   The TPCCC Director, Operations Supervisor and Shift Supervisors oversee the day-to-day operations. (Ex. H at p. 79.)  Since October 1993, Steven Thompson has served as TPCCC Director of Communications. (Ex. H at p. 8.)  Since 1998, Tammy Conover has served as TPCCC Operations Supervisor and is responsible overseeing personnel issues, including training and scheduling of absences and vacations. (Ex. I at p. 8.)

5.   In 2003, TPCCC had 16 dispatchers and had less than 50 employees. (Ex. H at pp. 30-31.)

6.   Neither TPCCC Director Thompson nor Operations Supervisor Conover recall Plaintiff making her alleged FMLA request in May 2002. (Ex. H at p. 39; Ex. I at p. 21.)

***TPCCC's Relationship with the City***

7.   TPCCC contracts with the City to perform payroll and accounts payable services. (Ex. G at p. 26; Ex. H. at p. 44; Ex. I at p. 41; Ex. K at p. 13.)  TPCCC has its own accounts that fund the payroll and accounts payable. (Ex. I at p. 41-42.)

8.   TPCCC controls the pay rate and raises of its employees. (Ex. K at p. 41.)

9.   Prior to 2002, TPCCC contracted with the City to provide health and life insurance. (Ex. F at p. 12; Ex. H at p. 56.)  In 2002, TPCCC procured its own health insurance through John Deere and life insurance through Met Life. (Ex. F at p. 15; Ex. H at p. 56.)

10.  Beginning in 2002, TPCCC paid rent to the City for use of space in a City owned building in the amount of $855 per month. (Ex. H. at p. 14.)  The City issues identification badges to persons using City buildings for security purposes and is not limited to City employees only. (Ex. F at p. 16.)

11.  The City does not negotiate the collective bargaining agreement in place between the FOP and TPCCC, which governs the terms and conditions of TPCCC employees.  (Ex. K at p. 42; *see, e.g.*, Ex. V.)

12.  Only TPCCC staff evaluate TPCCC employees and neither the City nor Tazewell County evaluates TPCCC employees. (Ex. H at p. 80.)

13.  Director Thompson did not consult with the City or Tazewell County regarding Plaintiff's excessive absences and suspensions in 2002-2003.  (Ex. H at p. 82.)

14.  Mayor Tebben and Chief Gillespie were not involved in any of Plaintiff's sick leave decisions or TPCCC's day-to-day operations. (Ex. H at p. 83.)

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

***TPCCC Board***

15.    The TPCCC Board meets once a year to discuss the budget and meets as needed for special matters. (Ex. F at p. 4.)

16.    Mayor Tebben did not know of Plaintiff's FMLA Request.  (Ex. F at p. 6.)

17.    The Board is not involved in the day-to-day operations of TPCCC. (Ex. F at p. 24.)

18.    On January 3, 2003, the TPCCC Board held a meeting where the Board concurred with TPCCC Director Thompson's progressive disciplining of Plaintiff for excessive absences. (Ex. H at p. 73.)

19.    The TPCCC Board concurred with TPCCC Director Thompson's recommendation for Plaintiff's termination. (Ex. H at p. 74.)

***Plaintiff's Employment History at TPCCC***

20.    In 1983, Plaintiff first started working at TPCCC. (Ex. E at p. 5.)  She was hired by then director of TPCCC, Art Knaak, and fired by TPCCC Director Thompson. (Ex. E at p. 84.)

21.    Plaintiff admitted that her supervisors were Sue Vansaghi, a former TPCCC shift supervisor, and TPCCC Director Thompson. (Ex. E at p. 77.)

22.    Plaintiff admitted that Mayor Tebben and Chief Gillespie did not supervise her day-to-day work. (Ex. E at p. 83.)

23.    From August 1999 to January 2001, TPCCC accommodated Plaintiff with a leave of absence due to her daughter's death.  (Ex. E at p. 30.)

24.    On or about August 18, 2003, Plaintiff filed a charge of discrimination with the EEOC based on a "disabling mental condition" and a "chronic physical condition that causes pain of a disabling nature." (Ex. U.)

25.    TPCCC Director Thompson testified that he was not aware of the severity of Plaintiff's pancreatitis, that he did not check on her at home when she was absent for work, and did not dock her a sick day and a vacation day for each day she was absent. (Ex. H at p. 60.)

26.    In 1998, Plaintiff was placed on medical verification for her sick leave.  (Ex. E at p. 40.) Plaintiff admitted that she did not give any verifying medical documents to the City. (Ex. E at p. 81.)

27.    Plaintiff admitted that she did not call the City to report sickness. Plaintiff admitted that she did not interact with anyone at the City with regards to her requested leave, but that approvals for time off came from TPCCC Director Thompson.  (Ex. E at pp. 78-80.)

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

28.     Plaintiff admitted that calling in sick places a burden on the Union, other TPCCC employees, and TPCCC due to staffing issues. (Ex. E at pp. 32-33.)

29.     Plaintiff admitted to receiving progressive discipline due to her absences.  Plaintiff admitted that TPCCC Director Thompson told her of his dissatisfaction with her work attendance in 1998-1999.  (Ex. E at p. 40.)

30.     Plaintiff admitted to receiving a letter of reprimand for patterned illnesses in July 1999. (Ex. E at p. 40.)

31.     On April 26, 2002, she received a written reprimand taking 32 sick days in the previous year. (Ex. E at p. 44; Ex. P.)

32.     In May 2002, Plaintiff received a one-day suspension due to excessive absences. (Ex. E at p. 44; Ex. Q.)

33.     On November 6, 2002, she received a five-day suspension for patterned excessive absences. (Ex. R. )

34.     On January 16, 2003, she received a 20-day suspension for continued patterned absences. (Ex. E at p. 45; Ex. S).

35.     Plaintiff admitted receiving these disciplinary actions. (Ex. E at p. 18.)

36.     Plaintiff admitted that in October 2002, she was advised that she had no more benefits time left to take leave.  Plaintiff admitted that she knew that she had no more available time left for her requested leave on April 18, 2003. (Ex. E at pp. 25-26.)

37.     Plaintiff admitted that she requested a day off in March 2003 even though she did not have any benefit time, and that TPCCC Director Thompson approved two additional days of leave for surgery. (Ex. E at p. 27.)

38.     Plaintiff admitted she missed four days of work in 2003 after her 20-day suspension and before her termination on April 24, 2003. (Ex. E at p. 29.)

39.     On April 24, 2003, Plaintiff received a letter of termination of her employment at TPCCC. (Ex. E at p. 11; Ex. T.)

40.     Plaintiff admitted that she did not recall any other TPCCC employees having the same number of absences or receiving disciplinary actions during 2001-2003. (Ex. E at pp. 36-37.)

41.     In August 2003, Plaintiff admitted that she had corrective surgery.  (Ex. E at pp. 64-65.)

42.     Plaintiff admitted that prior to her corrective surgery, her pancreatitis flare-ups and related limitations were temporary. (Ex. E at p. 65.)

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

43.   Plaintiff admitted that her claimed limitations in her activities of eating, sleeping, walking, and standing were all temporary. (Ex. E at pp. 71-72.)

***Plaintiff's Post-TPCCC Employment History***

44.   Plaintiff admitted that after her termination on April 24, 2004, she did not seek employment until August 2004. (Ex. E at p. 56.) Plaintiff admitted that she was not told by any medical professional not to work at that time. *Id.*

45.   In August 2004, Plaintiff worked as a baby sitter and admitted that she had no problems caring for a child, picking up the child, and cleaning. (Ex. E at p. 53.)

46.   Plaintiff worked for six-weeks at Bearing Distributors, Inc. at the end of 2005 and early 2006 as a parts deliverer, and admitted that she could drive and lift parts weighing under 50 pounds into her delivery vehicle. (Ex. E at pp. 50-52.)

47.   Since March 2006, Plaintiff has worked as a manager at Towerline Raceway working second shift, five days a week. Plaintiff admitted that she stands on her feet most of the shift and has no restrictions in performing her job. (Ex. E at pp. 49-50.)

48.   Plaintiff admitted that while she is currently treating with her primary care physician, she is not being treated for pancreatitis. (Ex. E at pp. 59-60.)

49.   Plaintiff admitted that she is able to complete daily activities, such as cleaning the house, taking shower and bath, gardening, and mowing the grass. (Ex. E at pp. 61-62.)

50.   Plaintiff admitted that she has painted the rooms in her house and has no problems using a roller, carrying and lifting paint buckets, and getting on a ladder. (Ex. E at pp. 63-64.)

51.   Plaintiff admitted that she walks one mile in her neighborhood with her husband and dog five days out of the week. (Ex. E at p. 66.)

52.   Plaintiff admitted that she did not work for a part of the City. (Ex. E at p. 79.)

53.   Plaintiff conceded that the City did not guide the method and manner of how she performed her job on a day-to-day basis. (Ex. E at p. 84.)

## STANDARD OF REVIEW

Defendant bears the initial burden on summary judgment of informing the court of the basis for its motion, directing the court to the determinative issues, and identifying the available evidence which demonstrates the absence of a genuine issue of material fact on each issue. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party on a motion for summary judgment may

**HEYL ROYSTER VOELKER & ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

fulfill its burden by showing the court there is an absence of evidence on an issue on which the non-movant has the burden of proof. *Id.* Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. R. 56(e) (emphasis added). All inferences that can be drawn from the evidence presented are drawn in favor of the non-moving party-in this instance, the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 460 (7th Cir. 1986), *cert. denied*, 479 U.S. 1066 (1987).

## ARGUMENT

**A.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF CANNOT ESTABLISH THE PRIMA FACIE ELEMENTS OF AN ACTION UNDER THE AMERICANS WITH DISABILITIES ACT.**

### 1.  The City of Pekin was not Plaintiff's Employer for Purposes of the ADA.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees . . . and other terms, conditions, and privileges of employment." *See Brown v. City of North Chicago*, 2006 WL 1840802 (N.D. Ill. June 28, 2006) (quoting 42 U.S.C. § 12112(a)). The determination of whether an individual is an employee is a legal conclusion, which involves an application of the law to the facts. *EEOC v. North Knox School Corp.*, 154 F.3d 744, 747 (7th Cir. 1998). In ADA actions, a plaintiff "must demonstrate the existence of an employment relationship . . . in order to prevail . . . [in] his ADA claim." *Brown*, 2006 WL 1840802 at *5; *see also Birchem v. Knights of Columbus*, 116 F.3d 310, 312 (8th Cir. 1997). The Seventh Circuit uses the "economic realities test" to determine whether an individual is an employee or an independent contractor, which "involves an application of the general principles of agency to the facts." *Knight v. Untied Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378 (7th Cir. 1991). The court should consider:

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

8

(1) The extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectation. *See Worth v. Tyer*, 276 F.3d 249, 263 (7th Cir. 2001) (citing *Knight*, 950 F.2d at 378-79).

As to the first factor, Plaintiff conceded that the City did not guide the manner and method of her day-to-day work. (Ex. E at p.84.) Rather, Director Thompson and Operations Supervisor Conover controlled the day-to-day operations of TPCCC, not the City. (Ex. H at pp. 8, 79; Ex. I at p. 8.) The City did not hire, evaluate, discipline, train, schedule, or fire Plaintiff. (Ex. E at pp. 5, 29, 40, 44-45, 77, 84; Ex. H at p. 80; Ex. I at p. 8.) Plaintiff admitted that she did not interact with the City for her requests for sick leave. (Ex. E at pp. 32-33.) Even in their positions as City representatives on the TPCCC Board, Plaintiff admitted that Mayor Tebben and Chief Gillespie had no involvement in the day-to-day supervision of Plaintiff. (Ex. E at p. 83; Ex. H at p. 83.) Thus, the first factor favors a finding that Plaintiff was not an employee of the City fo Pekin.

Plaintiff's position required skill and training obtained at TPCCC, not the City. Operations Supervisor Conover testified that she was responsible for ensuring that personnel were certified in CPR, EMD, and Law Enforcement Agency Data System. (Ex. I at p. 8.) Plaintiff also had to follow standards and protocols in handling certain emergencies. Thus, the City played no part in training Plaintiff. Turning to the third factor, TPCCC was solely responsible for the costs of operation. TPCCC had its own budget, accounts payable, and received its funding from the 37 agencies that paid to use TPCCC's dispatching services from which TPCCC paid its payroll, equipment, supplies, and operational costs. (Ex. G at p. 24.) TPCCC also paid rent to the City of Pekin for its use of City owned property. (Ex. H at p. 14.) TPCCC's financial autonomy favors a finding that the City was not Plaintiff's employer.

**HeylRoyster**
**Voelker**
**&Allen**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

9

It is undisputed that TPCCC contracts with the City of Pekin to provide payroll services. However, these services were merely administrative in nature, for which TPCCC paid the City. (Ex. G. at p. 26; Ex. H at p. 44; Ex. I at p. 41; Ex. K at p. 13.) TPCCC provided the funding for the payroll and established the rates of pay and raises for its employees. (Ex. I at p. 41-42; Ex. K at p. 41.) While TPCCC did contract with the City to provide a benefits package, in 2003 TPCCC obtained its own insurance plans and ceased contracting with the City. (Ex. F at pp. 12, 15; Ex. H at p. 56.) Although the City contracted with TPCCC to provide limited administrative services, the City was not Plaintiff's employer because it did not have right to control the method or manner of Plaintiff's work or to make decisions regarding pay and benefits of TPCCC employees.

The fifth factor, the length of job commitment and/or expectation, also favors a finding that Plaintiff was only an employee of TPCCC. Plaintiff was hired, evaluated, and fired by TPCCC, not the City. (Ex. E at p. 84; Ex. H at p. 80.) The dispatchers at TPCCC were all union members with the FOP, and their terms and conditions of employment were governed by the collective bargaining agreement that the FOP negotiated with TPCCC, which was listed as the "employer." (Ex. V.)

The balancing of these five factors demonstrates that Plaintiff was not an employee of the City, but rather was the sole employee of TPCCC. To the extent that the City provided limited administrative services to TPCCC by contract does not establish that the City specifically controlled any aspect of Plaintiff's employment. Therefore, summary judgment is appropriate because Plaintiff cannot prove that the City was her employer.

### 2.      Plaintiff Cannot Establish That the City was a Joint Employer.

As the court noted in its Order of April 18, 2005, the Seventh Circuit has left unsettled the issue of the applicability of the joint employer theory in discrimination cases. (Ex. D.) The Northern District in *Brown* recently held that the joint employer applied in the context of Title VII and the

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

10

ADA, but did not analyze the issue. *Brown*, 2006 WL 1840802 at *7 (citing *Piano v. Ameritech/SBC,* 2003 WL 260337 at *5 (N.D. Ill. Feb. 5, 2003)). The Seventh Circuit has not specifically addressed what factors a court should use when determining joint employer status. *See Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205 (7th Cir. 1986). The Illinois Supreme Court has articulated its own standard for determining if joint employment exists, which is whether "two or more employers exert significant control over the same employees where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 117, 838 N.E.2d 894 (2005) (quoting *Village of Winfield v. Illinois State Labor Relations Board*, 176 Ill. 2d 54, 60 (1997)). The joint employment relationship is employee-specific. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1324 (10th Cir. 2004).

In *Sandoval v. City of Boulder*, the Tenth Circuit dealt with a similar factual scenario as the instant case and analyzed the joint employer issue with a test similar to that of the Illinois Supreme Court. The plaintiff in *Sandoval* tried to establish a joint employer relationship between the City of Boulder ("city") and the Boulder Regional Communications Center ("BRCC"), which was run by the city, County of Boulder, and other municipalities. The BRCC was controlled by a seven- member Executive Committee ("EC") staffed by the heads of the various agencies that joined in the intergovernmental agreement. The EC was in charge over hiring and supervision of the BRCC and its employees. Plaintiff Sandoval, brought a Title VII action alleging that she was discriminated against when the BRCC EC did not hire her as the director.

The Tenth Circuit held that the plaintiff had to show that the city and EC were joint employers of the staff, as well as plaintiff's specific position. The Tenth Circuit noted that the director was hired by the EC, paid from the BRCC budget, and that the city's only control over the terms and conditions

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

of the director's employment was through its representation on the EC. These factors were insufficient to show that the city shared or co-determined the essential terms and conditions of the plaintiff's employment.

Like the city in *Sandoval*, the City did not share or co-determine the essential terms and condition of Plaintiff's employment. Similar to *Sandoval*, the City's only connection to employment decisions of TPCCC was limited to the two positions held by Mayor Tebben and Chief Gillespie on the TPCCC Board. The Board did not make hiring, disciplining, or firing decisions, but left those to Director Thompson. Plaintiff admitted that neither Mayor Tebben nor Police Chief Gillespie supervised her on a day-to-day basis, or guided the manner or method of her work. (Ex. E at pp. 83-84.) She also did not seek approval for leave from the City and did not have to give medical documents for verification to the City. (Ex. E at pp. 80-82.) Plaintiff conceded that she did not work for a department of the City. (Ex. E at p. 79.) Because Plaintiff has admitted that the City was not involved in any part of the terms and conditions of her employment, she fails to establish the City as a joint employer. Therefore, Plaintiff's ADA claims against the City must fail because she cannot meet the threshold requirement of establishing that the City was her employer.

### 3.    Plaintiff Does Not Have a Disability as Defined by the ADA.

Defendants are also entitled to summary judgment as a matter of law because Plaintiff cannot overcome the first *prima facie* element of an ADA claim, that she has a "disability" as defined by the ADA. Under the ADA, a "disability" is:

(A)    a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B)    a record of such impairment; or
(C)    being regarded as having such impairment.

42 U.S.C. § 12102(2); *Skorup v. Modern Door Corp.,* 153 F.3d 512, 514 (7th Cir. 1998); *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002) (citing 42 U.S.C. § 12102(2)(A)).

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

Plaintiff has alleged the first prong of the definition in that she had an impairment, chronic pancreatitis, which substantially limited her major life activities. Plaintiff must establish the existence of an actual disability to fall within the definition, and it is the plaintiff's burden to establish the existence of such a disability. *See, e.g., Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 961 (7th Cir. 1996). Merely having an impairment does not make one disabled for purposes of the ADA. 42 U.S.C. § 12101 *et seq.* "The impairment's impact must also be permanent or long term." *Toyota Motor*, 534 U.S. at 198.

Plaintiff must also prove that her impairment substantially limits a major life activity. *Toyota Motor,* 534 U.S. at 195 (2002). "Major life activities" are those activities that are of "central importance to most people's daily lives" and "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii); *Toyota Motor*, 534 U.S. at 197. The following factors should be considered when determining whether a condition constitutes a substantial limitation on a major life activity.

(1)    The nature and severity of the impairment;
(2)    The duration or expected duration of the impairment; and
(3)    The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2) (2002). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482-83 (1999). A temporary disability is not covered by the ADA. *Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197 (7th Cir. 1997).

In this case, Plaintiff cannot prove she had a disability to trigger rights under the ADA. A mere diagnosis of a condition or claim of impairment does not constitute a disability under the ADA. Here, Plaintiff admitted she had a temporary physical impairment and that it did not substantially limit

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

any major life activity. At most, a condition of chronic pancreatitis is an impairment, but not a disability under the ADA. *See, e.g.*, *Waldrip v. General Electric Co.*, 325 F.3d 652 (5th Cir. 2003); *Dicino v. Aetna U.S. Healthcare*, 2003 WL 21501818 (D. N.J. June 23, 2003) (holding that an employee's abdominal and back pain related to pancreatitis did not substantially limit any of her major life activities including sleeping, eating, and working).

For example, in *Waldrip*, plaintiff worked various jobs at a GE manufacturing plant, which involved the use of heavy industrial machinery. Plaintiff was diagnosed with chronic pancreatitis, which occasionally required him to miss a few days of work and take pain medications, which came with a warning not to operate heavy machinery. When GE learned of the pain medication, GE told plaintiff he could not work while under the influence of the medications. Plaintiff then alleged that company officials fired him and removed him from the plant.

In analyzing whether plaintiff had a disability under the ADA, the Fifth Circuit considered (1) whether plaintiff had an "impairment," (2) whether the activity on which he relies is a "major life activity," (3) and, if so, whether his impairment "substantially limits that major life activity. *Waldrip*, 325 F.3d at 654 (citing *Bragdon v. Abbott*, 524 U.S. 524, 631 (1998)). The plaintiff in *Waldrip* claimed his impairment substantially limited his ability to eat and digest. The Fifth Circuit held that chronic pancreatitis was a "physical impairment." *Waldrip*, 325 F.3d at 655. However, the Fifth Circuit held that plaintiff failed to provide any evidence that his impairment substantially limited the major life activity of eating. The court pointed out that "[p]ermanency, not frequency, is the touchstone of a substantially limiting impairment." *Waldrip*, 325 F.3d at 656 (quoting *Burch v. Coca-Cola Co.*, 119 F.3d 305, 316 (5th Cir. 1997)). The Fifth Circuit found unpersuasive the fact that plaintiff had to occasionally miss a few days of work when his chronic pancreatitis flared up

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

because it failed to show permanency or a substantial limitation. Thus, the Fifth Circuit affirmed the district court's granting of summary judgment in favor of GE.

Similar to the plaintiff in *Waldrip*, Plaintiff conclusively testified that her chronic pancreatitis limited the major life activities of "any physical activity, standing, eating, and sleeping." (Ex. E at p. 8.); *see Hillburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999) (holding that conclusory allegations without specific supporting facts have no probative value for purposes of establishing an ADA claim). However, Plaintiff admitted that her pancreatitis flare ups were temporary and not long-term or permanent. (Ex. E at p. 65.) Like *Waldrip*, Plaintiff has failed to prove that her impairment was permanent where she occasionally had to miss a few days of work. Rather, Plaintiff admitted that after her corrective surgery in August 2003, she has not been substantially limited in the central tasks of daily life. (Ex. E at pp. 64-65.)

For example, Plaintiff is able to drive herself to work at a raceway five days a week and stands on her feet for most of her shift without problem. (Ex. E at p. 49.) Before the job at the raceway, Plaintiff delivered parts and had no problems lifting parts weighing less than 50 pounds and placing them into a vehicle. (Ex. E at pp. 51-52.) Prior to that position, Plaintiff worked in home child care and admitted that she had no physical problems caring for a child, picking up a child, or cleaning. (Ex. E at pp. 52-54.) Plaintiff conceded that she no longer treats for pancreatitis with her primary care physician. (Ex. E at p. 60.) Plaintiff admitted that she has no problems with daily activities such as cleaning the house, taking a shower, gardening, or mowing the grass. (Ex. E at pp. 61-62.) Plaintiff also admitted that she walks one mile a day, five days out of the week. (Ex. E at pp. 66-67.) Based on her own testimony, Plaintiff cannot establish that she had a disability as defined by the ADA. Therefore, as a matter of law, Defendants are entitled to summary judgment as to all of Plaintiff's ADA claims because she was not disabled.

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

4.      **Mayor Tebben and Chief Gillespie Cannot Be Held Individually Liable Under the ADA.**

Plaintiff's action against Mayor Tebben and Chief Gillespie for retaliation under the ADA fails as a matter of law. The Seventh Circuit has held that the ADA does not provide for individual liability, instead limiting actions to employers under the legal theory of *respondeat superior*. *See EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1279-82 (7th Cir. 1995). Under the ADA, the term "employer" does not extend to individuals. *Delafuente v. Northwestern Memorial Hospital*, 2006 WL 1749940 (N.D. Ill. June 21, 2006) (citing *AIC Sec. Investigations*, 55 F.3d at 1276). A suit against a public official in her official capacity is a suit against the entity of which that official is an agent. *See, e.g.*, *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001). Therefore, summary judgment is appropriate for Mayor Tebben and Chief Gillespie as to all of Plaintiff's ADA allegations against them in there individual and official capacities.

B.      **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THE FAMILY MEDICAL LEAVE ACT DOES NOT APPLY TO PLAINTIFF**

1.      **The City Was Not Plaintiff's Employer under the FMLA.**

The FMLA only applies to employer-employee relationships. The FMLA extends employer status to "any person who acts, directly or indirectly, in the interest of the employer to any of the employees of such employer. 29 U.S. C. § 2611(4)(A)(ii)(I). The FMLA tracks the Fair Labor Standards Act ("FLSA") word for word regarding the definition of the term "employer." *See Freemon v. Foley,* 911 F. Supp. 326, 330 (N.D. Ill. 1995) (citing *Reich v. Midwest Plastic Eng'g, Inc.,* 1995 U.S. Dist. LEXIS 8772 (W. D. Mich 1995)). Status as an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.,* 787 F.2d 1205, 1206 (7th Cir. 1985).

The Seventh Circuit has not set forth a test for determining whether an entity is an individual's employer. Other courts consider (1) whether or not the employment took place on the premises of

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

**Suite 600**
**124 S.W. Adams Street**
**Peoria, IL 61602-1352**
**Fax (309) 676-3374**
**(309) 676-0400**

16

the alleged employer; (2) how much control the alleged employer exerted on the employees; and (3) whether or not the alleged employer had the power to fire, hire, or modify the employment condition of the employees. *See Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1255 (11th Cir. 2004) (quoting *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) (quoting *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968)).

As to the first factor, while TPCCC technically is located within a City building, TPCCC pays rent to the City to use the space. (Ex. H at p. 14.) As noted above in the ADA argument, the City exerted no active control over Plaintiff.  At most, the City is a vendor providing administrative services for TPCCC, which did no effect Plaintiff's specific employment.  Plaintiff admitted that her supervisors were TPCCC employees, and not Mayor Tebben, Chief Gillespie, or the City. (Ex. E at, pp. 77, 79, 83.)   Similarly, the City did not have any authority to hire, fire, discipline, evaluate, or modify Plaintiff's employment.  None of these factors provide any  support for Plaintiff's claim that the City was her employer.

### 2. The City Is Not a Joint Employer as Defined by the FMLA.

Plaintiff has failed to put forth any evidence to satisfy the requirements of finding the City a joint employer with TPCCC.  Plaintiff's FMLA count necessarily depends on the City being a joint employer of Plaintiff because it is undisputed that TPCCC does not to meet the statutory requirement of having more than 50 employees. 29 U.S.C. § 2611(2)(B)(ii).  The Department of Labor ("DOL") regulations construing the FMLA provide two instances in which some or all of the employees of two or more defendants may be combined for purposes of the FMLA employee threshold, the "joint employment" test, 29 C.F.R. § 825.106, and the "integrated employer" test, 29 C.F.R. § 825.104(c)(2). The Northern District has extended the Seventh Circuit's abrogation of the integrated

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

enterprise test in *Papa v. Katy Indus., Inc.*, 166 F.3d 937 (7th Cir. 1999), to apply to the FMLA. *See Diani v. Valex, Inc.*, 56 F. Supp. 2d 1023, 1025 (N.D. Ill. 1999).

A joint employment relationship exists where "two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities." 29 C.F.R. § 825.106(a). The DOL regulations further provide that the determination of whether a joint employment relationship exists requires analysis of the following factors:

> Where the employee performs work which simultaneously benefits two or more employers . . . , a joint employment relationship will be considered to exist in situations such as:
>
> (1)    Where there is an arrangement between employers to share an employee's services or to interchange employees;
> (2)    Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> (3)    Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 825.106(a)(1)-(3).

Whether a joint employment relationship exists "is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality." 29 C.F.R. § 825.106(b). Under these factors, it is clear that the City is not a joint employer. First, Plaintiff has not put forth any evidence that the City and TPCCC share or interchange employees. Second, the City does not act in the interest of TPCCC in relation to Plaintiff. Rather, the City only provides TPCCC administrative services and two representatives to TPCCC's Board. Neither of these facts demonstrate that the City acted or controlled Plaintiff's specific employment. Third, as already discussed, the City is disassociated with respect to Plaintiff's employment and does not share any control over the method or manner of her work, or terms and conditions of her employment.

**HEYL ROYSTER VOELKER & ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

18

3. **The City Is Not a Joint Employer under the Common Law Tests for Joint Employment under the FMLA.**

There is little Seventh Circuit case law interpreting joint employment under the FMLA. *Dinkins v. Varsity Contractors, Inc.*, 2005 WL 599979 at *6 (N.D. Ill. Mar. 10, 2005). However, district courts in Illinois have consulted the case law interpreting this issue under the FLSA. *Id.* (citing *Sherry v. Protection, Inc.*, 981 F. Supp. 1133, 1135 (N.D. Ill. 1997). There is a split in the circuits as to the precise factors to consider in determining joint employment under the FLSA. The First and Ninth Circuits employ a four factor test,[1] while the Second Circuit established a less-restrictive six-factor test drawn from the Supreme Court's decision in *Rutherford*.[2] In *Dinkins*, the Northern District of Illinois reasoned that under both tests would be the same, thus, the court used the "economic realities test." *Dinkins*, 2005 WL 599979 at *6. In doing so, the court focused on the power to fire an employee, which the court noted was "one of the hallmarks of the control possessed by employers." *Id.* (citing *U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1536 (7th Cir. 1987)). The court also placed emphasis on the issue of control by assessing to what extent the alleged joint employer controlled employees by assigning, directing, and supervising tasks and duties.

In this case, the result would be the same under the *Bonnette* four factor test or the

---

[1] The four factors are: (1) whether the alleged employer had the power to hire and fire; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *See Baystate Alternative Staffing, Inv. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

[2] The six factors are: (1) whether the plaintiffs used the entity's premises and equipment for their work; (2) whether the labor contractor had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiff's performed a discrete line-job that was integral to the entity's process of production; (4) whether responsibility under the labor contracts could pass from one subcontractor to another; (5) the degree to which the entity or its agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the entity. *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

*Rutherford* six factor test, the City is not as joint employer with TPCCC. The various factors in both tests have been analyzed at length in the preceding discussion. As discussed above, under the "economic realities" test, the factors weigh heavily in favor of a finding that the City was not Plaintiff's employer. The City did not hire or fire Plaintiff. Moreover, the City did not have any involvement in the day-to-day conditions of Plaintiff's employment.

While Plaintiff may point to various payroll and benefits forms, newspaper listings, or a City issued security badge, these are all consistent with the administrative services provided by contract to TPCCC and do not make Plaintiff an employee of the City. It is undisputed that TPCCC contracted with the City to provide administrative services. It is also undisputed that TPCCC pays rent to use space in a City building. Plaintiff had a City issued security badge because she needed access to a City building where TPCCC rented space to house its communications center. These facts do not provide any legal basis to support a finding that the City acted as a joint employer. The "economic reality" was that the City was not Plaintiff's employer and therefore the FMLA does not apply to Plaintiff.

### 4.    Defendants Tebben and Gillespie Were Not the Employers of Plaintiff Because They Did Not Have Any Supervisory Authority.

To the extent that Plaintiff alleges that Mayor Tebben and Chief Gillespie acted as City officials in their capacity as members of the TPCCC Board to establish a joint employment relationship, such an argument fails as previously discussed. In order to have individual liability as an employer under the FLSA, the Seventh Circuit has noted that the individual must have had "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation." *Freemon*, 911 F. Supp. at 331 (citing *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). "Thus, even if a defendant does not exercise exclusive control over all the day-to-day affairs of the employer, so long as he or she possesses control over the aspect of employment

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

20

alleged to have been violated, the FLSA will apply to that individual." *Freemon*, 911 F. Supp. at 331 (citations omitted).

Plaintiff conceded that Mayor Tebben and Chief Gillespie did not supervise her day-to-work or guide her work. (Ex. E at p. 83.) Moreover, neither Mayor Tebben nor Chief Gillespie had any control over Plaintiff's allegation that they violated her FMLA rights by denying her alleged May 2002 request for leave. In fact, Mayor Tebben testified that he did not know that Plaintiff had made an FMLA request and that he did not see the Department of Labor investigation related to Plaintiff's FMLA allegations. (Ex. F at p. 6.). Similarly, Chief Gillespie does not know when he became aware of Plaintiff's FMLA request. (Ex. G at p. 7.) Chief Gillespie testified that he learned of the request from TPCCC Director Thompson, however, Director Thompson testified that he did not recall Plaintiff requesting FMLA leave in May 2002. (Ex. G at p. 7; Ex. H at p. 39.) Neither Mayor Tebben nor Chief Gillespie were involved in the alleged denial of Plaintiff's FMLA request. Thus, summary judgment is appropriate on Plaintiff's FMLA count as to Mayor Tebben and Chief Gillespie in their official and individual capacities.

**C.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S RETALIATION COUNT BECAUSE DEFENDANTS TERMINATED HER FOR A LEGITIMATE AND A NON-DISCRIMINATORY REASON, EXCESSIVE ABSENTEEISM.**

Plaintiff's allegation that the City, Mayor Tebben, and Chief Gillespie retaliated and discriminated against her under the ADA and FMLA fails because as set forth above, these Defendants were not her employer and could not take any retaliatory and adverse action against her. Even if the court were to find these Defendants were Plaintiff's employer, Plaintiff was terminated for a legitimate reason, excessive absenteeism. Plaintiff has failed to put forth any evidence to show that her termination was a pretext for discrimination. "Once a non-retaliatory explanation has been articulated, the plaintiff must show that this explanation is a pretext for discrimination. To do this

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

21

the employee must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth." *See Malinee Yindee v. CCH Inc.*, 2006 WL 2328695 at *2 (7th Cir. Aug. 11, 2006) "It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law." *Id.* (citing *Forrester v. Rauland-Borg Corp*, (7th Cir. June 29, 2006)).

In this case, Plaintiff received progressive disciplining for her patterned absences and excessive absenteeism. Director Thompson provided Plaintiff with a verbal warning for patterned illness on August 2, 2001 (Ex. E); he gave her a written reprimand for missing 32 days in the last 12 month period on April 26, 2002 (Ex. P); he suspended her one day for missing two additional days since the written warning on May 16, 2002 (Ex. Q); on November 6, 2002, he suspended her for five days after missing an additional 15 days after the first suspension (Ex. R); and on January 16, 2003, he suspended her for 20 days for missing 4 additional days since the last suspension (Ex. S). Plaintiff has put forth no evidence to support any of her allegations that no other similarly situated employee faced similar adverse employment action. Thus, Plaintiff's retaliation action cannot prevail as a matter of law against the City Defendants.

**D.    DEFENDANTS TEBBEN AND GILLESPIE ARE ENTITLED TO SUMMARY JUDGMENT AS TO ALL OF PLAINTIFF'S COUNTS BECAUSE THEY ARE IMMUNE FROM LIABILITY UNDER THE VOLUNTEER PROTECTION ACT.**

Summary judgment is appropriate on all of Plaintiff's counts as to Defendants Tebben and Gillespie in their individual capacity because they have immunity under the Volunteer Protection Act of 1997, 42 U.S.C. §14501, *et seq.* The Act preempts not only state laws, but also federal laws, such as those at issue. *See Armendarez v. Glendale Youth Center, Inc.*, 265 F. Supp. 2d 1136, 1139-40 (D. Ariz. 2003) (reviewing the Volunteer Protection Act's legislative history and scholarly literature in concluding that the Act applies to both state and federal civil suits). This Act, in relevant part,

HEYLROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

provides that "no volunteer of a nonprofit organization or governmental entity shall be liable for harm caused by an act or omission of the volunteer on behalf of the organization or entity if -

(1)    the volunteer was acting within the scope of the volunteer's responsibilities . . . at the time of the act or omission;

* * *

(3)    the harm was not caused by willful or criminal misconduct, gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the volunteer; and

* * *

In this case, Mayor Tebben and Chief Gillespie were acting as volunteers on the Board of TPCCC, an Illinois not-for-profit corporation, at the time of Plaintiff's complained acts. They did not receive any compensation or personal benefit in exchange for their participation on the TPCCC Board. Plaintiff's termination was not caused by any willful or criminal misconduct, gross negligence, reckless misconduct, or any indifference to Plaintiff's rights. Therefore, Mayor Tebben and Chief Gillespie should be entitled to immunity under the Act and should be granted summary judgment as to all of Plaintiff's counts.

## CONCLUSION

Summary Judgment is appropriate as to all of Plaintiff's allegations because the City, Mayor Tebben, and Chief Gillespie did not act as Plaintiff's employer or joint employer for purposes of the ADA and FMLA. In addition, Plaintiff cannot establish a *prima facie* case under the ADA because her condition did not constitute a "disability" as defined by the ADA. These Defendants could not retaliate against Plaintiff because they were not her employer and she discharged for a legitimate, non-discriminatory reason, patterned absences and excessive absenteeism. Lastly, Defendants Tebben and Chief Gillespie do not have individual liability under the ADA, FMLA or the Volunteer Protection Act and should be granted summary judgment.

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

WHEREFORE, Defendants the CITY OF PEKIN, DAVID TEBBEN, and TIMOTHY GILLESPIE respectfully requests that this Court enter summary judgment in favor of Defendants and against Plaintiff on all counts; for attorney's fees and costs herein; and for any other relief this Court deems necessary.

CITY OF PEKIN, DAVID TEBBEN, and
TIMOTHY GILLESPIE

BY:    _____/s/ John K. Kim_____
HEYL, ROYSTER, VOELKER & ALLEN
Bradford B. Ingram
#3127206
John K. Kim
#6286591

**HEYL ROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

## PROOF OF SERVICE

I hereby certify that on the 14th day of August, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following via e-mail:

John A. Slevin
Vonachen, Lawless, Trager & Slevin
456 Fulton Street, Suite 425
Peoria, Illinois 61602-1240
**Attorney for Plaintiff, Denise Moldenhauer**

Patrick A. Murphey
Drain LaHood
Miller, Hall & Triggs
416 Main Street, Suite 1125
Peoria, IL 61602
**Attorneys for Defendants, Tazewell County, James Uniskcer, Robert Huston**

_____
/s/ John K. Kim
John K. Kim

JKK/lan
G:\75\P1975\P1975PSJ 002 MSJ 8-15-06.wpd

**HEYLROYSTER**
**VOELKER**
**&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400