**E-FILED**
Tuesday, 15 August, 2006  04:27:21 PM
Clerk, U.S. District Court, ILCD

# Agreement

# Between

# Tazewell/Pekin Consolidated Communcations Center

# And

# Illinois Fraternal Order of Police Labor Council

# Representing

# Tazewell/Pekin Consolidated Communication Center,

# Tazewell County FOP Lodge #98

# May 1, 1999 through April 30, 2002

Exhibit V

# ARTICLE I
## PREAMBLE

This Agreement is entered into by and between the Tazewell-Pekin Consolidated Communications Center, an Illinois not-for-profit corporation (herein referred to as the "Employer") and the Fraternal Order of Police Labor Council representing Tazewell-Pekin Consolidated Communication Center, Tazewell County Lodge #98 (herein referred to as the "Lodge").

The purpose of this Agreement is to provide an orderly collective bargaining relationship between the Employer and the Lodge representing the employees in the bargaining unit, and to make the basic terms upon which such relationship depends. It is the intent of both the Employer and the Lodge to work together to provide and maintain satisfactory terms and conditions of employment, and to prevent as well as to adjust misunderstandings and grievances relating to employees' wages, hours and working conditions.

In consideration of mutual promises, covenants and Agreement contained herein, the parties hereto, by their duly authorized representative and/or agents, do mutually covenant and agree as follows:

# ARTICLE II
## RECOGNITION

The Employer hereby recognizes the Lodge as the sole and exclusive collective bargaining representative for the purpose of collective bargaining on any and all matters relating to wages, hours, and all other terms and conditions of employment of all Employees in the bargaining unit. The bargaining unit shall include all full-time and part-time Dispatchers/Telecommunicators employed by the Tazewell/Pekin Consolidated Communications Center, an Illinois not-for-profit corporation.

Positions excluded from the above bargaining unit shall include: Director of Communications, Operations Supervisor, Secretary to the Director of Communications, Confidential Managerial and Supervisory employees as defined in the Act, and all other employees of the Employer.

# ARTICLE III
## NON-DISCRIMINATION

**Section 1.  Equal Employment Opportunity.**
The Employer will continue to provide equal employment opportunity for all employees and develop and apply equal employment practices.

**Section 2.  Non-Discrimination**
The Employer shall not discriminate against employees and employment-related decisions will be based on qualifications and

1

Exhibit V

predicted performance in a given position without regard to race, color, sex, age, religion, or national origin of the employees; nor shall the employer discriminate against employees as a result of lawful activities on behalf of the Lodge or membership in the Lodge, or the exercise of constitutional rights.  The Employer agrees to comply with all applicable laws.  Employees shall not be transferred, assigned or re-assigned or have any of their duties changed for reasons prohibited by this section.

## Section 3.   Use of Masculine Pronoun

The use of the masculine pronoun in this or any other document is understood to be for clerical convenience only, and it is further understood that the masculine pronoun includes the feminine pronoun as well.

## Section 4.   Drug Free Work Place

As a public Employer, the City is subject to certain duties to maintain a drug-free workplace, under Federal and State laws. Nothing in this Agreement shall be interpreted in a manner which might prevent the Employer from fulfilling such duties, or from taking measures necessary to maintain a drug-free workplace.

## ARTICLE IV
## DUES DEDUCTION AND FAIR SHARE

## Section 1. Dues Deduction

Upon receipt of a written and signed authorization form from an employee, the Employer shall deduct the amount of Lodge dues set forth in such form and any authorized increase thereof, and shall remit such deductions monthly to the Illinois Fraternal Order of Police Labor Council at the address designated by the Lodge in accordance with the laws of the State of Illinois.  The Lodge shall advise the Employer of any increase in dues, in writing, at least thirty (30) days prior to its effective date.

## Section 2. Dues

Each employee who on the effective date of this Agreement is a member of Lodge, and each employee who becomes a member after that date, maintain his membership in good standing in the Lodge during the terms of this Agreement.

With respect to any employee on whose behalf the Employer receives written authorization in a form agreed upon by the Lodge and the Employer, the Employer shall deduct from the wages of the employee the dues and/or financial obligation uniformly required and shall forward the full amount to the address designated by the Lodge.  The amounts deducted shall be in accordance with the schedule to be submitted to the Employer by the Lodge. Authorization for such deduction shall be irrevocable unless revoked by written notice the Employer and the Lodge during the fifteen (15)   day period prior to the expiration of this Agreement.

Exhibit V

## Section 3.  Fair Share

Any present employee who is not a member of the Lodge shall be required to pay a fair share (not to exceed the amount of the Lodge dues) of the cost of the collective bargaining process, contract administration in pursuing matters affecting wages, hours, and other conditions of employment, but not to exceed the amount of dues uniformly required of the members.  All employees hired on or after the effective date of this Agreement and who have not made application for membership shall, after the thirtieth (30th) day of their hire, also be required to pay a fair share as defined above.

## Section 4.  Indemnification

The Lodge hereby indemnifies and agrees to save the Employer harmless against any and all judgments that may arise out of or by reason of any proper action taken by the Employer for the purpose of complying with the provisions of this Section.

## ARTICLE V
## MANAGEMENT RIGHTS

The Employer has and will continue to retain and exercise the following rights, provided that no right is exercised contrary to or inconsistent with the terms of this Agreement:

(a)  To determine the organization and operations of the Tazewell-Pekin Consolidated Communications Center (TPCCC);

(b)  To determine and change the purpose, composition and function of each of its constituent departments and subdivisions;

(c)  To set standards for the services to be offered to the public;

(d)  To direct the employees of the TPCCC, including the right to assign work and overtime;

(e)  To hire, examine, classify, select, promote, restore to career service positions, train, transfer, assign and schedule employees;

(f)  To increase, reduce or change, modify or alter the composition and size of the work force, including the right to relieve employees from duties in accordance with the Layoff Article because of lack of work or funds or other proper reasons;

(g)  To contract out work when essential in the operation;

(h)  To establish work schedules and to determine the starting and quitting time, and the number of hours to be worked;

3                                    Exhibit V

(i)   To establish, modify, combine or abolish job positions and classifications;

(j)   To add, delete or alter methods of operation, equipment or facilities;

(k)   To establish, implement and maintain an effective internal control program;

(l)   To suspend, demote, discharge or take other disciplinary action against employees for just cause; and

(m)   To add, delete or alter policies, procedures and regulations.

Inherent managerial functions, prerogatives and policy-making rights, whether listed above or not, which the Employer has not expressly restricted by a specific provision of this Agreement, shall remain vested exclusively with the Employer.

Nothing in this Article shall abrogate or alter the other Articles of this Agreement.

## ARTICLE VI
## NO STRIKE

**Section 1.   No Strike Commitment**
Neither the Lodge nor any employee will call, initiate, authorize, participate in, sanction, encourage, or ratify any work stoppage or the concerted interference with the full, faithful and proper performance of the duties of employment with the Employer during the term of this Agreement.   Neither the Lodge nor any employee shall refuse to cross any picket line, by whomever established.

**Section 2.   Resumption of Operations.**
In the event of action prohibited by Section 1 above, the Lodge immediately shall disavow such action and request the employees to return to work, and shall use its best efforts to achieve a prompt resumption's of normal operations.   The Lodge, including its officials and agents, shall not be liable for any damages, direct or indirect, upon complying with the requirements of this Section.

**Section 3.   Lodge Liability.**
Upon the failure of the Lodge to comply with the provisions of Section 2 above, any agent or official of the Lodge who is an employee covered by this Agreement may be subject to the provisions of Section 4 below.

**Section 4.   Discipline of Strikers**
Any employee who violates the provisions of Section 1 of this Article shall be subject to immediate discharge.   Any action taken by the Employer against any employee who participates in

action prohibited by Section 1 above shall not be subject to the provisions of the grievance procedure, except that the issue of whether an employee in fact participated in a prohibited action shall be subject to the grievance and arbitration procedure.

## ARTICLE VII
## DISCIPLINE AND DISCHARGE

**Section 1.    Definition**

The parties agree with the tenets of corrective and progressive discipline. Disciplinary action shall include only the following:

      (a)    Oral Warning
      (b)    Written Warning
      (c)    Suspension Without Pay
      (d)    Demotion
      (e)    Discharge

**Section 2.    Just Cause**

The Employer agrees that disciplinary action shall be imposed only for just cause and shall be imposed as soon as practical after the Employer learns of the occurrence giving rise to the need for disciplinary action and after the Employer has had a reasonable opportunity to investigate the facts.

**Section 3.    Limitation**

The requirement to use progressive disciplinary action does not prohibit the Employer from using a severe measure including discharge, when the offense indicates that a substantial shortcoming or action of an Employee rendered the continuation of employment of the Employee in some way detrimental to the Employer or the Public.

**Section 4. Disciplinary Action Subject to the Grievance Procedure**

Disciplinary action by the Employer as provided for in this Article shall be subject to the provisions of Article IX, Grievance Procedure.

**Section 5.  Pre-Disciplinary Meeting**

For discipline other than oral and written reprimands, prior to notifying the employee of the contemplated discipline to be imposed, the Director or his designee shall meet with the employee involved and inform the employee of the reason for such contemplated discipline, including the names of potential witnesses and copies of pertinent documents.   The employee shall be informed of his/her contractual right to Labor Council representation and shall be entitled to such, if so requested by the employee.

**Section 6.    Application**

The provisions of this Article apply only to full-time employees.

## ARTICLE VIII
## IMPASSE RESOLUTION

The resolution of any bargaining impasse shall be in accordance with 5 ILCS 315/14.

## ARTICLE IX
## DISPUTE RESOLUTION AND GRIEVANCE PROCEDURE

### Section 1.   Definition and Procedure

It is desirable and hereby agreed that all formal grievances shall be handled in accordance with the following steps.  For the purpose of this Agreement, a grievance is any unresolved dispute raised by an Employee or the Lodge against the Employer, involving the meaning, interpretation, or application of the provisions of this Agreement.  Any time period provided for under the steps in the grievance procedure may be mutually extended.

Step 1.    The Employee, with or without a Lodge representative, may take up a grievance informally with the Employee's immediate supervisor within five (5) calendar days of its occurrence or when it reasonably should have been aware of by the grievant. In no event shall a grievance be filed more than thirty (30) calendar days after its occurrence. The immediate supervisor, with the final approval of the settlement given by the Director of Communications, will notify the employee in writing of the decision within ten (10) calendar days following the day when the complaint was made.

Step 2.    If the grievance is not settled in Step 1, the grievance may be referred in writing to the Board of Directors.  Within twenty (20) calendar days after the grievance has been filed, the Board of Directors shall meet with the Labor Council Representative and the grievant to discuss the grievance and make a good faith effort to resolve the grievance.   The Board of Directors shall respond in writing to the grievant within ten (10) calendar days following the meeting.

Step 3.    If the grievance is not settled in Step 2, the matter shall be referred to arbitration by written request by the Lodge.   This written request must be made within ten (10) calendar days of the Employer's answer in Step 2.  A representative of the Employer and the Lodge shall meet to select an arbitrator from a panel provided by Federal Mediation and Conciliation Service. From a list of seven arbitrators the parties shall alternately strike until one name remains.  The party to strike first shall be determined by a coin toss. Each party reserves the right to reject one list of arbitrators in its entirety.  The arbitrator shall be notified of his selection by a joint letter from the

6                            Exhibit V

Employer and the Lodge.  Such letter shall request the arbitrator to set a time and place for the hearing subject to the availability of the Employer and the Lodge representative and shall notify the arbitrator of the issue(s).  All hearings shall be held in the City of Pekin, Illinois, unless otherwise agreed to by the parties.

Both parties agree to make a good faith attempt to arrive at a joint statement of facts and issues to be submitted to the arbitrator.   The Employer or Lodge shall have the right to request the arbitrator to require the presence of witnesses and/or documents.   Each party shall bear the expense of its witness.

Questions of arbitrability shall be decided by the arbitrator. The arbitrator shall make a preliminary determination of the questions of arbitrability.  Once a determination is made that the matter is arbitrable or if such preliminary determination cannot be made, the arbitrator shall then proceed to determine the merits of the dispute.

The expenses and fees of the arbitrator mutually agreed to and the cost of the hearing room shall be shared equally by the parties.   The decision and award of the arbitrator shall be made within forty-five (45) days following the hearing and shall be final and binding on the Employer, the Lodge, and the employee or employees involved.  The arbitrator shall have no power to amend, modify, nullify, ignore, add to or subtract from the provisions of the Agreement.

**Section 2.  Representation**
Grievances may be processed by the Lodge on behalf of an Employee or on behalf of a group of Employees.  Either party may have the grievant or grievant representing group grievants present at any step of the grievance procedure, and the Employee is entitled to Lodge representation at each and every step of the grievance procedure upon his request.

Grievances may be filed on behalf of two or more Employees only if the same facts, issues and requested settlement apply to all Employees in the group.

**Section 3.  Subject Matter**
Only one subject matter shall be covered in any one grievance.   A grievance shall contain a statement of the grievant's position, the article and section of the Agreement allegedly violated, the date of the alleged violation, the relief sought, the signature of the grieving Employee(s), and the date.

**Section 4.  Time Limitations**
Grievances may be withdrawn at any step of the grievance procedure without precedent.  Grievances not appealed within the designated time limits will be treated as withdrawn grievances.

Exhibit V

The Employer's failure to respond within the time limits shall not find in favor of the grievant, but shall automatically advance the grievance to the next step.  Time limits may be extended by mutual agreement.

## ARTICLE X
## LABOR-MANAGEMENT CONFERENCES

The Lodge and the Employer mutually agree that in the interest of efficient management and harmonious employee relations, it is desirable that meetings be held between the Lodge representatives and responsible administrative representatives of the Employer. Such meetings may be requested at least ten (10) days in advance by either party by placing in writing a request to the other for a "labor-management conference" and expressly providing the agenda for such meeting.  The parties may mutually agree to waive the 10 day requirement.  Such meetings and locations shall be mutually agreed to before being held, and the purpose of any such meeting shall be limited to:

(a)  Discussion on the implementation and general administration of this Agreement;

(b)  A sharing of general information of interest to the parties; and

(c)  Discussion of non-bargaining conditions of employment by the Employer which may affect Employees.

When absence from work is required to attend "labor-management conferences", the affected party(ies) shall, before leaving their work station, give reasonable notice to and receive approval from the Director of Communications, and in the absence of this person, the Operations Supervisor, in order to remain in pay status.  The Director of Communications or his designee shall approve the absence except in emergency situations.

All time off mentioned in this Article shall be subject to the approval of the Director of Communications.

## ARTICLE XI
## LAY-OFF AND RECALL

**Section 1. Layoff**
When there is an impending lay-off with respect to the Employees in the bargaining unit the Employer shall inform the Labor Council in writing no later than forty-five (45) days prior to such lay-off. The Employer will provide the Labor Council with the names of all Employees to be laid-off, first, then Employees shall be laid-off in accordance with seniority as defined in Article XII. The Employees with the least amount of seniority shall be laid-off first. All Employees shall receive notice in

8

Exhibit V

writing of the lay-off at least forty-five (45) days in advance of the effective date of such lay-off.

No one will be hired to perform or be permitted to perform those duties normally performed by an Employee while any employee is on lay-off status. It is understood that the Director of Communications, the Operations Supervisor, the secretary and any other persons excluded by law from bargaining unit pursuant to Article II would be entitled to continue to perform their normal duties.

**Section 2. Lay-off Order**
Temporary and part-time Employees shall be laid-off in reverse order of their seniority, as defined in Article XII

**Section 3. Recall**
Any Employee who has been laid-off shall be placed on the appropriate reinstatement list and shall be recalled on the basis of seniority with TPCCC. Recall rights under this provision shall terminate twenty-four (24) months after lay-off.

If the Employee does not report to duty or turns down the right to resume employment, then his or her name shall be removed from the reinstatement list and he or she shall be deemed to have lost all seniority and recall rights.

In the event of recall, eligible Employees shall receive a written notice of recall by personal delivery, by certified mail with return receipt requested, or by posting of the notice at the affected Employee's most recent address as supplied by said Employee. It is the responsibility of all Employees eligible for recall to keep the Director of Communications notified of their current address. Upon receipt of the notice of recall, the Employee shall have three (3) calendar days to notify the Director of Communications of their acceptance of the recall. In the event the Employee has elected to return to work, the Employee shall have eleven (11) calendar days from the date of such election to report to duty, unless a longer period of time is authorized in writing by the Director of Communications

## ARTICLE XII.
## SENIORITY

**Section 1. Definition**

(a)  For full-time Employees as used herein the term "seniority" shall refer to and be defined as the continuous length of full-time service or employment from the date of last hire with Tazewell-Pekin Consolidated Communications Center for those covered by this Agreement.

(b)  For part-time Employees as used herein the term "seniority" shall refer to and be defined as the date of hire into part-

Exhibit V

time employment, or as in Section 2, subsection (c) of this Article.

## Section 2. Seniority Lists

(a)  The Employer shall prepare a list setting forth the present seniority dates of all Employees covered by this Agreement. Any dispute as to the seniority listing prepared by the Employer shall be resolved in the grievance procedure.

(b)  Full-time Employees who move from full-time to part-time will carry their full-time seniority with them in determining their placement on the part-time seniority list.

(c)  Part-time Employees who move to full-time positions will be placed at the bottom of the full-time seniority list.

(d)  Part-time Employees must work a minimum thirty-two (32) hours in a calendar month in order to accrue seniority for that month.

## Section 3. Termination of Seniority
All seniority shall be lost by an Employee who:

(a)  quits or resigns;

(b)  is discharged for just cause;

(c)  retires;

(d)  is laid off pursuant to the provisions of Article XI, or is absent from for any reason, for a period of twenty-four (24) months, or the employee's seniority at the time the absent began, whichever is less;

(e)  is absent without notice for three (3) consecutive work days, unless the employee demonstrates just cause for the absence, and for the failure to provide proper notice;

(f)  fails to return to work at the conclusion of scheduled vacation, or leave of absence, unless the employee demonstrates just cause for the absence, and for the failure to provide proper notice;

(g)  in regard to full-time Employees only, accepts gainful employment while on an approved leave of absence from T/PCCC.

## Section 4. Accrual of Seniority
Employees will not accrue seniority credit for time spent on unpaid leave of absence.

Exhibit V

**Section 5. Shift Seniority**

The full-time Employee who has the most longevity on a given shift will have first choice in choosing days off on that shift. Changes in the current "days off" shall be allowed when there is an opening on the shift or by mutual written agreement between the two Employees involved. This section does not apply to Employees who have been promoted to a supervisor's position on a full time basis.

**Section 6. Equalized Distribution of Overtime**

Equalized distribution of overtime will be administered according to the current policy. Any changes to the policy shall be by mutual agreement. Any impasses shall be resolved pursuant to the provisions of Article 8.

### ARTICLE XIII
### NEW EMPLOYEES PROBATIONARY PERIOD

All Employees (full or part-time) shall be on a probationary status for a period of one year from their date of hire. Probationary status means their employment may be terminated at any time during said period and that termination is not subject to the dispute resolution and grievance procedure (Article IX) nor is it subject to the discipline and discharge (Article VII).

### ARTICLE XIV
### INDEMNIFICATION

**Section 1.  Employer Responsibility:**

As provided for in Chapter 24, Illinois Revised Statutes, Paragraph 1-4-6, and so long as the Employee has acted within the scope of his employment and cooperates with the Employer during the course of the investigation, administration, litigation or defense of any claim arising under this Article, the Employer shall be responsible for within the limits of the aforesaid statute.

**Section 2. Legal Representation:**

Employees shall have legal representation selected by the Employer in any civil cause of action brought against an Employee resulting from or arising out of the performance of duties including separate representation by an attorney in the event that the legal representative of the Employer believes there may be a conflict of interest between the legal interests of such parties and the Employee involved.

**Section 3.  Limitations:**

No legal representation shall be provided for claims involving punitive damages.

Exhibit V

## ARTICLE XV
### F.O.P. REPRESENTATION

For the purpose of administering and enforcing the provisions of this Agreement, the Employer agrees as follows:

### Section 1. Grievance Processing

Reasonable time while on duty may be permitted one Lodge representative for the purpose of aiding or assisting or otherwise representing Employees in the handling and processing of grievances or exercising other rights set forth in this Agreement, and such reasonable time shall be without loss of pay. This Lodge representation is contingent upon it having no adverse effect upon operations, and provided that permission must be granted by the Director of Communications or his designee for the representative's in-pay status to be approved.

### Section 2. Lodge Negotiating Team.

(a)   Members designated as being on the Lodge negotiating team who are scheduled to work on a day on which negotiations will occur, may, for the purpose of attending scheduled negotiations, be excused from their regular duties without loss of pay after first obtaining prior approval from their immediate supervisor.   Only one (1) member in pay status will be allowed to attend the negotiating session.   If a designated Lodge negotiating team member is in regular day-off status on the day of negotiations, he will not be compensated for attending the session.   This Lodge representation is contingent upon it having no adverse effect upon operations, and provided that permission must be granted by the Director of Communications or his designee for the member in-pay status to be excused.

(b)   Where a member of the Lodge negotiating team is scheduled to work the midnight shift preceding a scheduled negotiation session in the morning, the employee shall be released four (4) hours early for his/her shift, without loss of pay, with prior approval.

## ARTICLE XVI
### BULLETIN BOARDS

The Employer shall provide the Lodge with adequate space for a bulletin board for the purposes of the Lodge.

## Article XVII
### LEAVE TIME

### Section 1. Death in Family

Employees may be granted up to three (3) working days off with pay to make arrangements for and/or attend the funeral of a member of his/her family.   Family shall include the employee's father, mother, father-in-law, mother-in-law, spouse, natural or

12

Exhibit V

adoptive child, brother, sister, grandparent, grandchild, brother-in-law or sister-in-law. Funerals of ½ step½ relatives of the same relationship may be approved. Special relationships with family members may be the basis for exceptions to these limitations by the department head.

## Section 2.  Short Term Military Leave

Any employee covered by the terms of this Agreement who is a member of a reserve force of the Armed Forces of the United States, or the State of Illinois, and who is ordered by the appropriate authorities to attend training programs or perform assigned duties shall be given a leave of absence, without pay, for the period of such activity and shall suffer no loss of seniority rights. Employees who are called up for two weeks active duty training may take a leave of absence without pay or take the option of using their earned vacation time/compensatory time.

## Section 3.  Educational Leave

Employees covered by the terms of this Agreement may be granted, upon written request, a Leave of Absence, without pay, not to exceed a period of one (1) year, at the sole discretion of the Director of Communications, according to the provisions of section 17.9 of this article.

## Section 4.  Maternity Leave

A leave of absence, without pay, shall be granted for maternity to any female employee upon request. Such request must be presented in writing to the Employee's immediate supervisor, setting forth a date each leave is to begin, as soon as that date can be determined by the Employee and the Employee's physician. Return to work shall be as soon as reasonable after delivery, as permitted by a signed release by the Employee's doctor. In no event, will the leave of absence exceed two (2) months with the absence of complications. In the event of medical complications, with proper medical verification, the leave may be extended no longer than four (4) months without approval from the T/PCCC Executive Board.

## Section 5.  Injury  Leave

An Employee who sustains injury arising out of and in the course of his employment shall not lose any benefits covered by this Agreement for a period up to one year. Employees on injury leave may be returned to light duty if able to perform the work and placed at the sole discretion of the Director of Communications, with a signed physician's recommendation.

## Section 6.  Sick Leave

(a)    Sick Leave Accumulation: Employees covered by the terms of this Agreement earn sick leave, with pay, at the rate of one (1) day per month for the first ten (10) months, totaling 10 days per year. Unused sick leave may accumulate to a maximum one hundred (100) days. Sick leave is a benefit and

not a right. Use of sick leave shall be for a non-job related illness or injury.

The Employer may require a physician's certificate after an absence of two (2) consecutive working days.

(b)  Sick Leave Non-use Bonus: Where an employee has accumulated fifty (50) unused sick leave days authorized in (a) above, and does not use any sick leave days in the fiscal year, the employee shall be entitled to two (2) day's pay at the current hourly wage rate, in the first regular pay period of the next year. Where an employee has accumulated the maximum number of unused sick leave days authorized in (a) above, and uses only one (1) sick leave day in the fiscal year, the employee shall be entitled to one (1) day's pay at the current hourly wage rate, in the first regular pay period of the next year.

(c)  IMRF Accumulation: Where an employee has accumulated the maximum sick leave authorized in (a) above, the employee may continue to accumulate additional sick leave days solely for the purpose of credit at retirement to the extent permitted by the Illinois Municipal Retirement Fund (IMRF). Such additional sick leave days accumulated shall not be used for any other purpose. No payment for any unused sick leave days shall be made on death, retirement, or other separation of employment.

## Section 7.  Personal Days

Employees covered by the terms of this Agreement will earn two (2) personal days, with pay, per year. Employees are encouraged to inform the Employer as far in advance as possible when planning to take a personal day; however, a minimum twenty-four (24) hour notice must be given in order to take a personal day unless waived by the Employer.

## Section 8.  General Leave of Absence

Employees covered by this Agreement may be allowed, at the sole discretion of the Director of Communication, to take a Leave of Absence, for a period of time to be determined by the Director. If such leave is granted, the Employee shall not be entitled to benefits provided by this Agreement and shall not earn seniority for the period of leave time.

## ARTICLE XVIII
## WAGE RATES

## Section 1.  Total Wage Increases

All Employees covered by the terms of this agreement will be granted wage increases as enumerated in Appendix A.

## Section 2.  Temporary Supervisor Pay

Any employee who temporarily works in the capacity of supervisor shall receive an additional seventy cents ($.70) per

Exhibit V

hour. This temporary assignment shall be defined as any Employee who works in the capacity of supervisor for a period of time in excess of four (4) hours during a shift.

**Section 3. Shift Differential**
Any employee assigned to work the evening or night shift shall receive an additional twenty-five cents ($.25) per hour added to their hourly rate.

**Section 4. Training Compensation**
Training pay will increase to fifty-five cents ($.55) per hour. The Employer shall select the employee to be assigned such training duty provided the employee agrees to accept the assignment.

**Section 5. Database Coordinator**
Any employee assigned to perform the duties of Database Coordinator, shall receive and additional thirty-five cents ($.35) per hour added to the base.

**Article XIX**
**VACATIONS**

**Section 1. Vacation Schedule**
The following vacation schedule shall apply to full-time employees within the bargaining unit covered by this Agreement:

1.  Employees with one (1) full year of completed service shall receive two (2) weeks of paid vacation.

2.  Employees with five (5) full years completed service but less than ten (10) years of completed service shall receive three (3) weeks of paid vacation.

3.  Employees with ten (10) full years of completed service shall receive four (4) weeks of paid vacation.

An employee will become eligible for vacation after he completes one year of service. An employee will continue to be eligible for the amount of vacation as described in Section 19.1 (a) anytime in the fiscal year that he completes the required years of service.

**Section 2. Limitations**
Vacation time can be taken in four (4) hour increments at the sole discretion of the Director.

**Section 3. Definition of Full-time Employee**
For the purposes of this Article, full-time employee means anyone who is hired and designated as a full time employee.

**Section 4. Vacation Time Period**
All earned vacation time pursuant to section 19.1 above, will be taken between May 1 and April 30 of the fiscal year. In

15

Exhibit V

the event that the Employer denies an Employees request for any remaining vacation time earned prior to the end of the vacation time period, the Employee shall be allowed to carry the time over into the next vacation time period.

**Section 5.  Vacation at Termination of Employment**
No employee shall be eligible to receive any benefits under this Article if he quits or resigns from the employment of the Employer without giving two (2) weeks notice in writing of his intention to resign.

**Section 6.  Vacation Selection**
During April 1 through April 15 of each year, employees may request priority vacation for the following year beginning May 1, subject to seniority for a maximum of ten (10) working days of vacation.  After April 15, the Director of Communications shall notify any employee whose priority pick is in conflict with a more senior person so the employee may re-select his priority pick.  All conflicts in priority picks shall be resolved in the above enumerated manner between April 15 and April 30.

After April 30, any vacation time, whether it is priority time not submitted during the appropriate period or not, shall be on a first come, first serve basis.  Any requests bearing the same date shall be determined by seniority.

Priority will be given to requests made in blocks of at least one week in the selection of priority picks.  This choice shall take preference over seniority.

## ARTICLE XX
## INSURANCE

**Section 1.  Life Insurance**
The Employer shall supply each full-time employee covered by the terms of this Agreement with $14,000.00 in group term life insurance coverage.

**Section 2.  Hospitalization**
So long as the City of Pekin Employee Health Benefit Plan is offered and available to the Tazewell Pekin Consolidated Communications Center, regular full-time employees of the Employer will be provided such individual and dependent family coverage as is available under that Benefit Plan, as it presently exists or hereafter changes.  In the event that the Benefit Plan is no longer available, the Employer and the Union shall bargain about alternative coverage, and the costs of that coverage.  In the event of an impasse in such negotiations, it shall be resolved pursuant to article VII of the Agreement.

Claims for individual benefits shall be submitted pursuant to, and determined in accordance with, the provisions of the benefit plan then in effect, which shall not be apart of this Agreement.

**Section 3.  Family Insurance Premium Co-Payment**
     Beginning May 1, 1999, employees who are enrolled in dependent family coverage will be required to pay $10.00 per month for family insurance.  Beginning May 1, 2000, employees who are enrolled in dependent family coverage will pay 50% of any increase in premium costs above a cap of $583.00, to a maximum employee co-pay of $25.00 per month.  Beginning May 1, 2001, employees will pay 50% of any increase in premiums above the cap reached in FY 00/01, with an employee cap of $50.00 per month.

### Article XXI
### HOLIDAYS

**Section 1.  Holidays To Be Observed**
     The following days shall be recognized and observed as paid holidays:

     New Year's Day
     Lincoln's Birthday
     Easter
     Memorial Day
     Independence Day
     Labor Day
     Veteran's day
     Thanksgiving
     Christmas Day

**Section 2.  Compensation for Holidays**
     Employees covered by this Agreement shall be paid a regular day's pay when their regularly scheduled day off falls on the actual day of a holiday.

     An employee who works on a listed holiday shall be paid 2X rate for all hours worked on the holiday, including overtime and call-outs.

**Section 3.  Compensation for Part-time Employees**
     Part-time Employees will be paid at two times (2X) their hourly rate for working a holiday which is listed in Section 22.1 above.

### Article XXII
### HOURS AND OVERTIME

**Section 1.  Work Day and Work Week**
     The work day will consist of eight or ten continuous hours. The work week will consist of five consecutive days followed by two consecutive days off if working an eight hour schedule or an agreed to schedule if assigned to work a ten hour day. All time in excess of forty (40) hours in a one (1) week period shall be compensated as provided in Section 22.2.

     Each Employee shall be allowed a forty-five (45) minute meal period per tour of duty, at least thirty (30) minutes of which

Exhibit V

shall be uninterrupted and allowed to be taken off premise subject to the supervisors approval and policy established for this practice attached as Appendix B and made part of this Agreement by reference. This meal shall be considered out of service time. Employees will be allowed two (2) fifteen minute coffee breaks. The Employee shall remain on the premises during fifteen minutes of their meal period and coffee breaks. In the event that taking breaks remains a problem, by written notice from the Union, the parties agree to meet and negotiate the impact of the problem.

Employees who are forced to work over or are forced in early shall have an additional fifteen (15) minute break and have priority in taking their breaks over the regular employees of that shift.

**Section 2.   Overtime Payment**
All overtime in excess forty (40) hours in a one (1) week period required of an Employee by reason of the Employees' regular duty, whether of an emergency nature or of a non-emergency nature, shall receive one and one-half (1 1/2) times their actual hourly rate. All paid leave with the exception of sick time will be considered hours worked for purposes of determining overtime payment.

Compensatory time may be paid in lieu of overtime payment if the Employee in his discretion so elects. Compensatory time will be calculated at the same rate as overtime pay. Overtime rate shall be computed on the basis of completed fifteen (15) minute segments.

**Section 3.   Compensatory Time**
Compensatory time shall be granted at such times and in such time logs as are mutually agreed upon between the involved Employee and a Supervisor; permission to utilize compensatory time shall not be unreasonably denied by the Supervisor if operational requirements will not be adversely affected. Compensatory time shall be granted in blocks of that Employee's normal tour of duty. Comp-time shall not accrue in excess of forty (40) hours.

In the event an emergency is declared by the Employer, as many of the Employees shall be continued on duty for such number of hours as may be necessary.

**Section 4.   Call Back**
A call-back is defined as an official assignment of work which does not continuously precede or follow an Employee's regularly scheduled working hours. Employees reporting back to the Employer's premises at a specified time on a regularly scheduled work day shall be compensated for two (2) hours or the actual time worked, whichever is greater, at the overtime rate.

18                                              Exhibit V

## ARTICLE XXIII
## GENERAL PROVISIONS

**Section 1.    FOP Representatives On Premise**
Authorized representatives of the National or State Lodge shall be permitted to visit the Communications Center during work hours to talk with officers of the Local Lodge and/ or representatives of the Employer concerning matters covered by this Agreement, provided that permission is granted by the Director of Communications or his designee and it having no adverse effect upon operations.

**Section 2.    FOP Right to Examine Records**
The Lodge or a representative shall have the right to examine time sheets and other records pertaining to the computation of compensation of any employee whose pay is in dispute or any other records of the employee pertaining to a specific grievance, at reasonable times with the Director of Operations or his designee's consent.

**Section 3.    Repair and Replace**
The Employer agrees to repair or replace as necessary an employees personal property/possessions, if such are damaged or broken during the course of a prisoner search.    Incident to be documented with the immediate supervisor.

## ARTICLE XXIV
## RESIDENCY REQUIREMENT

All employees (full or part-time) shall reside in Tazewell County, except any not residing in Tazewell County prior to May 1, 1990 may continue their current residence. No current employee may change their residence to a location outside of Tazewell County after May 1, 1990.

## ARTICLE XXV
## SAVINGS CLAUSE

If any provision of this Agreement or any application thereof should be rendered or declared unlawful, invalid or unenforceable by virtue of any judicial action, or by any existing or subsequently enacted Federal or State Legislation, or by Executive Order , the remaining provisions of this Agreement shall remain in full force and effect.    In such event, upon the request of either party, the parties shall meet promptly and negotiate with respect to substitute provisions for those provisions rendered or declared unlawful, invalid or unenforceable.

Exhibit V

### ARTICLE XXVI
### DURATION

**Section 1. Terms of Agreement**
This Agreement shall be effective from May 1, 1999, and shall remain in full force and effect until April 30, 2002. It shall continue in effect from year to year thereafter unless notice of termination is given in writing by certified mail by either party no earlier than one hundred twenty (120) days preceding expiration. The notices referred to shall be considered to have been given as of the date shown on the postmark. Written notice may be tendered in person, in which case the date shall be the written date of receipt.

**Section 2. Continuing Effect**
Notwithstanding any provisions of this Article or Agreement to the contrary, this Agreement shall remain in full force and effect after any expiration date while negotiations or Resolution of Impasse Procedure are continuing for a new Agreement or part thereof between the parties.

**Section 3. Reopener**
The parties agree that if either side decides to reopen negotiations making any changes to the Agreement, the other party may so notify the other at least ninety (90) days and no more than one-hundred twenty (120) days prior to the expiration of this Agreement for the extension thereof. In the event such notice is given, then the parties shall meet no later than ten (10) days after the date of receipt of such notice, or at reasonable times as are agreeable to both parties for the purpose of negotiation. All notices provided for in this Agreement shall be served upon the other party by certified mail, return receipt requested.

**Section 4. Notices**
Any notices required under this contract shall be directed as follows:

The Tazewell/Pekin CCC Executive Board
City Hall, 400 Margaret
Pekin, IL 61554

To the Labor Council:

Illinois F.O.P. Labor Council
974 Clock Tower
Springfield, IL 62704

and

Fraternal Order of Police, Lodge #98
T/PCCC Dispatchers
400 Margaret Street
Pekin, IL 61554

Exhibit V

**Signatures**

For the Employer:                                                    Date:

*Timothy M. Gillespie*                                          4 - 12 - 99
Chairman Of TPCCC Board


For the Union:                                                       Date:

*Sue L. Vansaghi*                                              4 - 12 - 99
Negotiating Committee

*Traci G. Nitschke*                                            4 - 12 - 99
Negotiating Committee

*Michael D. Ercegovich*                                        4 - 12 - 99
Negotiating Committee

*Doug Crawford*                                                4/13/99
Field Representative


21                                          Exhibit V

## Appendix A
### Wages and Longevity

**Full time Annual Wages:**

| Pay Steps | 5/1/98 | 5/1/99 New Steps | 5/1/99 | 5/1/00 | 5/1/01 |
|---|---|---|---|---|---|
| start | $12,280 | start | $14,560 | $15,288 | $16,058 |
| after training | $14,688 | after training | $17,160 | $18,013 | $18,907 |
| after 6 months | $16,373 | after 6 months | $19,240 | $20,197 | $21,216 |
| 1 yr | $24,223 | 1 yr | $25,434 | $26,706 | $28,041 |
| after 3 yrs | $24,464 | after 3 yrs | $25,687 | $26,972 | $28,320 |
| after 5 yrs | $24,705 | after 5 yrs | $25,940 | $27,237 | $28,599 |
| after 7 yrs | $24,945 | after 7 yrs | $26,192 | $27,502 | $28,877 |
| after 9 yrs | $25,162 | after 9 yrs | $26,420 | $27,741 | $29,128 |
| after 11 yrs | $25,402 | after 11 yrs | $26,672 | $28,006 | $29,406 |
|  |  | after 13 yrs | $26,939 | $28,286 | $29,700 |
|  |  | after 15 yrs | $27,208 | $28,569 | $29,997 |
|  |  | after 17 yrs | $27,480 | $28,854 | $30,297 |

**Full Time Hourly Rates:**

| 5/1/98 | Pay Steps | 5/1/99 | 5/1/00 | 5/1/01 |
|---|---|---|---|---|
| $5.90 | start | $7.00 | $7.35 | $7.72 |
| $7.06 | after training | $8.25 | $8.66 | $9.09 |
| $7.87 | after 6 months | $9.25 | $9.71 | $10.20 |
| $11.65 | 1 yr | $12.23 | $12.84 | $13.48 |
| $11.76 | after 3 yrs | $12.35 | $12.97 | $13.62 |
| $11.88 | after 5 yrs | $12.47 | $13.09 | $13.75 |
| $11.99 | after 7 yrs | $12.59 | $13.22 | $13.88 |
| $12.10 | after 9 yrs | $12.70 | $13.34 | $14.00 |
| $12.21 | after 11 yrs | $12.82 | $13.46 | $14.14 |
| $12.21 | after 13 yrs | $12.95 | $13.60 | $14.28 |
| $12.21 | after 15 yrs | $13.08 | $13.73 | $14.42 |
| $12.21 | after 17 yrs | $13.21 | $13.87 | $14.57 |

**Part time wages:**

| | 5/1/99 | 5/1/00 | 5/1/01 |
|---|---|---|---|
| start | $7.00 | $7.35 | $7.72 |
| after training | $8.25 | $8.66 | $9.09 |
| after 6 months | $9.25 | $9.71 | $10.20 |
| 1 yr | $9.80 | $10.29 | $10.80 |

Exhibit V

## Appendix B
## Off Premise Break Policy

The thirty (30) minute meal break off premise shall be permitted consistent with the following guidelines:

a)  Off-premise meal breaks shall only be allowed when the Center is fully staffed: and

b)  Employees utilizing the off-premise meal break, shall "punch out" when leaving the Center and ░ punch in░ when returning; and

c)  Employees utilizing the off-premise meal break, shall return promptly back to work within the thirty (30) minute time frame. Tardiness will be dealt with according to the guidelines as established in Article VII Discipline and Discharge.

d)  Employees utilizing the off-premise meal break, shall take a portable radio with them, supplied by the Employer, and respond promptly if requested to return to the Center; and

e)  Off-premise breaks shall be granted at the discretion of the shift supervisor, or operator in charge. If the work load or unfavorable conditions exist, the supervisor or operator in charge may deny the off-premise breaks during that time period; and

f)  Off-premise breaks shall not be granted during the first or last hour of an assigned shift. Off-premise breaks shall not be used in conjunction with comp-time or any other benefit time.

Exhibit V