**E-FILED**
Tuesday, 15 August, 2006  04:54:41 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| DENISE N. MOLDENHAUER, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04-CV-1169 |
| ) | |
| TAZEWELL-PEKIN CONSOLIDATED ) | |
| COMMUNICATIONS CENTER; CITY OF ) | |
| PEKIN; TAZEWELL COUNTY; STEVEN F. ) | |
| THOMPSON; DAVID TEBBEN; JAMES ) | |
| UNSICKER, ROBERT HUSTON; and ) | |
| TIMOTHY GILLESPIE, ) | |
| Defendants. ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendants, Tazewell-Pekin Consolidated Communications Center, Inc., and Tazewell County, by their attorneys, moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's scheduling order in accordance with Local Rule 7.1-1.

## Introduction

Plaintiff seeks to maintain claims against all Defendants through a three count Complaint.  Count I asserts a claim for violations of the Americans With Disabilities Act (ADA) against movants, Tazewell-Pekin Consolidated Communications Center, Inc. (T/PCCC), an Illinois not for profit corporation, and Tazewell County; and the second municipal corporation, the City of Pekin, which has separate representation in these proceedings.  Plaintiff asserts the two municipal corporations, Tazewell County and the City of Pekin, jointly employed Plaintiff under the ADA with T/PCCC.  At all times material to the litigation, T/PCCC was Plaintiff's employer, and an employer within the

meaning of the ADA.  T/PCCC and Tazewell County move for judgment as a matter of law that Tazewell County is not a "joint employer with T/PCCC", or an employer with respect to Plaintiff, under the ADA.  Tazewell County also moves for judgment as a matter of law with respect to the ADA claims stated in Count I, and in Count III (ADA retaliation), because Plaintiff did not name Tazewell County in her August 18, 2004 charge of discrimination filed with the Equal Employment Opportunity Commission (EEOC) and her charge did not assert a claim of retaliation, only the claims of disability discrimination and failure to provide reasonable accommodation asserted in Count I (T/PCCC joins in the later portion of such motion relative to Count III ADA retaliation count) .  T/PCCC and Tazewell County further move for judgment as a matter of law relative to the discrimination and/or failure to make reasonable accommodation claims alleged in Count I occurring before October 20, 2003, the three hundredth first day before the charge Plaintiff filed with EEOC on August 18, 2004, because her charge was untimely under the ADA.  T/PCCC and Tazewell County also move for Summary Judgment relative to Count I, and the ADA retaliation claim in Count III, because Plaintiff is not a qualified individual with a disability within the meaning of the ADA, and cannot state a claim for relief for that reason.

With respect to the Family and Medical Leave Act (FMLA) claims asserted in Count II, and Count III's FMLA retaliation claim, T/PCCC and Tazewell County move for judgment as a matter of law that Tazewell County is not a "joint employer" of Plaintiff under the FMLA, that T/PCCC is not an employer under the FMLA because it does not employ 50 or more employees and is not a public agency, and because Plaintiff cannot establish her employment at a worksite where 50 or more employees were employed by

her employer, and cannot state a claim under the FMLA as an eligible employee for such reason.

## Statement of Material Undisputed Facts

1.      Tazewell Pekin Consolidated Communications Center, Inc. (T/PCCC also referred to as Taz-Comm.) is an Illinois not for profit corporation incorporated pursuant to the Illinois General Not For Profit Corporation Act, 805 ILCS 105/101.01- et. seq. (T/PCCC's Articles of Incorporation and By-Laws, and current registration with the Illinois Secretary of State, denoting its filing of its annual report and fees, and good standing status, are attached to Thompson's Affidavit as Exhibit  A).

2.      T/PCCC was incorporated to provide emergency – 911 communications services to the citizens of Tazewell County in 1976, following an intergovernmental agreement between the Tazewell County Board of Supervisors and the City of Pekin's City Council dated July 7, 1976 to establish a combined communications center to serve residents of both the City and County, and emergency services providers, by providing emergency - 911 communications and dispatch services within Tazewell County. (Thompson Affidavit, Exhibit A).

3.      The County of Tazewell is a unit of local government operating under the Illinois Counties Code, 55 ILCS 5/1-1000 et. seq.  The County seat is the City of Pekin. Operations of the County are governed by the Board of Supervisors, who are elected. The Chairperson of the Tazewell County Board is elected to that office by the voters in general election (Unsicker Dep.,  p. 49).  The current County Board Chairman is James Unsicker, who has held that office for 10 years (Unsicker Dep., p. 4).  Tazewell County employs a County Administrator to administer operations of County government.

4.    The Sheriff of Tazewell County is an office created by the Illinois Constitution, and is elected by the voters of Tazewell County through general election pursuant to the Illinois Counties Code 55 ILCS 5/3-6001 et. seq.  The present Sheriff of Tazewell County is Robert Huston, who has held that office since December, 1998 (Huston Dep., p. 4).  The Sheriff directs the operations of the Tazewell County Sheriffs Department, as well as the jail and courthouse pursuant to statute (Huston Dep. pp. 33, 34), and has the authority to appoint and dismiss officers and employees of that Department, subject to the Sheriffs Merit Commission Act for deputy sheriffs.  55 ILCS 5/3-6008-3-6039.

5.    The City of Pekin is an Illinois municipal corporation established under the Illinois Municipal Code, 65 ILCS 5/1- et. seq.  It operates under the City Manager form of government, 65 ILCS 5/4-1-et. seq., with a five member City Council, a Mayor and 4 Commissioners, who are elected by the voters in general elections, and who appoint the City Manager to administer the operations of City government.  The City Manager appoints and dismisses the officers and employees of the City (Tebben Dep. p. 13, with the exception of those officers subject to the Fire and Police Commission Act, 65 ILCS 5/10-201-1 et. seq.

6.    Pursuant to the Illinois General Not For Profit Corporation Act, T/PCCC's bylaws provide for a perpetual Board of Directors of four individuals, specifically the individuals elected and/or currently serving as the Sheriff of Tazewell County, the Chairperson of the Tazewell County Board of Supervisors, the Mayor of the City of Pekin, and the Chief of Police of the Pekin Police Department, or any persons they might designate to serve on the Board of Directors of T/PCCC in their place respectively.  (Thompson Affidavit, Exhibit 3, Article III A. 1, p. 1).

7.    From January 1, 2000 until April 1, 2003, the T/PCCC Board of Directors consisted of John Huston, James Unsicker, David Tebben and Timothy Gillespie, Pekin Police Chief.  On April 1, 2003, David Tebben lost the election for Mayor of the City of Pekin to Lyn Howard, and immediately ceased service on the T/PCCC Board of Directors, being replaced by Lyn Howard until Howard resigned.

8.    Robert Huston and Timothy Gillespie alternate as Chairman and Vice Chairman of the T/PCCC Board every four years, with Gillespie having replaced Huston as chair in May, 2006, and Huston having replaced Gillespie as Chairperson in 2002.

9.    T/PCCC's Board of Directors appoints an Executive Director to operate the communications center and manage its budget and operations.  Steven Thompson was appointed as Executive Director of T/PCCC in 1993, and has held that position continuously since appointment.  Mr. Thompson was hired by T/PCCC in 1976 as a part-time telecommunicator, and served as a telecommunicator/shift supervisor until he was designated Operations Supervisor at T/PCCC by former Executive Director William Surratt in 1981.  (Thompson Dep., p. 10).

10.    When Mr. Thompson was appointed Executive Director by the T/PCCC Board, he appointed Tammie Conover to the position of Operations Supervisor (Thompson Dep. p. _).  Thompson has the authority to hire and dismiss employees of T/PCCC, and may do so without prior approval of T/PCCC Board.  (Huston Dep., pp. 26, 32).

11.    T/PCCC provides emergency -911 communications services for, and dispatches fire, police, rescue, ambulance and other emergency service providers for thirty-eight (38) separate entities, from its current operations, located at 1130 Koch Street in the City of Pekin.  T/PCCC operates pursuant to a May 1 – April 30 fiscal year,

and charges agencies contracting with it for its communication/dispatch services under a formula based upon the volume of services provided to that user annually. (Thompson Dep., p._, Huston Dep., p. 30).  The largest user is the City of Pekin's Police and Fire Departments, and the second largest user is the Tazewell County Sheriffs Department.  Other agencies using T/PCCC's services, and contributing revenues to its operations budget, include among others, the Marquette Heights, North Pekin, South Pekin, Minier, Hopedale, Delevan and Tremont police and/or rescue departments, Cincinnati Township and Shaefferville Fire and Rescue, and Advanced Medical Transport, Inc.

12.    The Center's operations are staffed by full time and as necessary, part time telecommunicators, twenty-four hours a day, seven days a week, with four (4) full time telecommunicators scheduled on a 8:00 a.m. to 4:00 p.m. (first) shift, five day on, two days off; five (5) full time communicators scheduled on a 4:00 p.m. to 12:00 p.m. (second) shift, five on, two off; and six (6) full time telecommunicators scheduled on a 12:00 p.m. to 8:00 a.m. (third) shift, five on, two off (Thompson Dep. 25, Exhibit 5).

13.    Plaintiff suffers from acute pancreatitis with flare ups which she admits render her totally disabled and require her to stay in bed and rest for twenty-four to forty-eight hours.  (Moldenhauer Dep., pp. 7, 10, 65).

14.    All of the Center's full and part time telecommunicators are included in a collective bargaining unit for which the Illinois Fraternal Order of Police Labor Council (FOP Labor Council) is the recognized exclusive bargaining agent, and T/PCCC and the FOP Labor Council have been parties to a series of collective bargaining agreements, including the Agreement in effect May 1, 2002 through April 30, 2006 (Thompson Dep. p. 34, Exhibit 3).  The bargaining agreements are negotiated by Executive Director

6

Thompson, and signed by Thompson, and whomever is then T/PCCC Board Chairman, on behalf of the Employer, and specify T/PCCC as the employer of all unit employees, which excludes only the Executive Director and Operations Supervisor (Thompson Dep. p. 34, Exhibit 3).  The Agreement sets the wages, hours and conditions of employment for full and part time telecommunicators, including provisions they may be discharged for just cause, and provides a grievance-arbitration procedure for the resolution of grievances which is final and binding (Thompson Dep. p. 34, Exhibit 3, Article 7, Article 9, pp 5-8, Moldenhauer Dep. p. 14).

15.    During the period January 1, 2002 through April 24, 2004, T/PCCC employed no more than 21 full and/or part time bargaining unit employees, or 23 with the Executive Director and Operations Supervisor, during any payroll period, with several of the part time employees being scheduled only sporadically, or not at all, in specific payroll periods (Thompson Dep. p. 25, Moldenhauer Dep. p. 35, Exhibit 5.). April 24, 2004 is the date of Plaintiff's discharge.  T/PCCC did not employ any employees in excess of 23 in any payroll period after April 24, 2004 through December 31, 2004, or to date (Thompson Affidavit, ¶15).

16.    Plaintiff Denise Moldenhauer was employed by Tazewell-Pekin Consolidated Communication Center, Inc. as a dispatcher-telecommunicator from August, 1983, until her termination effective April 24, 2003.  (Moldenhauer Response to Request to Admit ¶1, Request to Admit 1).

17.    Moldenhauer was scheduled as a full time employee on the 8:00 a.m. to 4:00 p.m. shift, five days on duty followed by 2 days off (Thompson Dep., Exhibit 5), with at least two other telecommunicators daily.  Where one of the three scheduled employees failed to report for duty as scheduled, and could not be replaced by a part

time employee, or an off duty full time employee, the two employees remaining on their shift had to perform all functions, and could not leave the facility for lunch or take break periods.  (Moldenhauer Dep. pp. 33, 34).   Such short staffing could also adversely impact the Center's ability to receive and promptly dispatch/respond to 911 calls. (Moldenhauer Dep. p. 34).

18.     Plaintiff claims to have been discriminated against on the basis of her disability between January 1, 1999 and April 18, 2003.   (Plaintiff's Admission ¶1, Request to Admit 2).  Prior to January 1, 1999, Plaintiff was not discriminated against by her employer.  (Plaintiff's Admission ¶1, Request to Admit 3).

19.     Plaintiff was subject to progressive disciplinary actions for patterned and excessive absenteeism, commencing with a first warning and reprimand in 1998 (Thompson Affidavit ¶16, Exhibit _).   Plaintiff received a warning July 21, 1999 for Patterned Illness.   Plaintiff was scheduled off on a leave of absence from August through December 1999, and the entire 2000 calendar year.  (Plaintiff Admissions ¶1, Request to Admit 4 and 5).   Plaintiff returned to work January 4, 2001, after being certified as fit for duty (Moldenhauer Dep. p. 30).   Plaintiff took 25 days of sick leave during calendar year 2001, on which days she was absent from work (Plaintiff's Admissions ¶1, Request to Admit 6.)  Each of Plaintiff's 2001 absences were a single day, often in conjunction with her scheduled day off, or weekend days on which she was scheduled to work, and Plaintiff received a verbal warning for Patterned Illness August 2, 2001. (Moldenhauer Dep. p. 19).

20.     Plaintiff took approximately 34 days of sick leave during calendar year 2002, on which days she was absent from work.  (Plaintiffs Admission ¶1, Request to Admit 7).  With the exception of one four day absence for sickness February 20, 21, 22

8

and 23, 2002, all of her absences were less than three days consecutively, with most being single day absences (Thompson Dep. Exhibit 5, Thompson Affidavit 2002 Attendance Calendar).

21.     On April 26, 2002, Thompson issued Plaintiff a written reprimand for excessive absences from work, stating "These excessive absences not only make it difficult to manage an organization such as this, but it places an undo burden on your fellow employees.  As a reminder several of these sick days have been taken in conjunction with your days off, for which you were previously warned."  (Thompson Dep. Thompson Affidavit, Exhibit 5 2001-2002 Attendance Calendar).

22.     On May 16, 2002, Director Thompson issued Plaintiff a one day disciplinary suspension for continued absenteeism, after first meeting with Plaintiff in a pre-disciplinary meeting May 15, after Plaintiff was absent on two additional days, leaving work reportedly ill on May 2, and calling off because of "fever" on May 3, 2002. (Thompson Dep., Thompson Affidavit ¶12).  The disciplinary notice forewarned Plaintiff each subsequent absence would be investigated, and if the excessive absences continued she could expect further progressive discipline, up to and including discharge.

23.     Plaintiff was absent from work an additional fifteen days after her May 16, 2006 disciplinary suspension on single day absences.  The reasons listed for her absences included "went home sick 10/29/02…Just can't make it in", (10/29) "sick – feels like flu" (10/29), "medical condition" (10/19), "medical condition-sick" (10/13), "migraine" (10/10), "needed to take a pain pill" (9/25)"not feeling well" (9/17), "child she is babysitting is sick, father out of town, making arrangements for babysitter" (9/5), "running fever" (8/31), "sick due to medical problems" (8/25), "sick" (8/23), "sick due to

9

serious medical condition" (7/26), "serious medical condition" (8/3), "serious health condition" (7/16), "abdominal pain" (7/5), "abdominal pain" (6/14), "left work ill" (6/13).

24.     On November 6, 2002, Thompson issued Plaintiff a five day suspension as progressive discipline under the collective bargaining agreement (Thompson Affidavit, Moldenhauer Dep. p. 18,) for excessive absences from work.  Plaintiff was suspended November 7, 2002 through November 13, 2002.  Plaintiff filed a grievance contesting the suspension under the bargaining agreement (Moldenhauer Dep. p. 17), which was denied by Director Thompson in the first step of the grievance procedure. (Moldenhauer Dep. 17, 45).

25.     Following the five day disciplinary suspension, Plaintiff was absent four additional dates for single day absences; December 7, 2002, when her husband calling in, stating she would be absent due to medical condition, December 13, 2002, when her husband reported her "sick" the shift after she had requested and received three days bereavement leave, (September 10, 11 and 12), December 14, when her husband reported she had an "earache", and January 9, 2002, when she reported she had "earache/headache".  Moldenhauer Admissions ¶1, Request to Admit questions,).

26.     On January 16, 2003, Director Thompson issued Plaintiff a twenty day disciplinary suspension "due to continued patterned absences from work" (Thompson Affidavit, Moldenhauer Dep. p. 18) warning Plaintiff her continued pattern of excessive absences from work could result in further action, up to and including discharge".  The suspension was effective January 17 through February 13, 2003.  Plaintiff filed a second grievance under the collective bargaining agreement to contest the suspension, which was denied by Director Thompson in the first step of the grievance procedure. (Moldenhauer Dep. p. 45).

27.    Under the bargaining agreement, the second and last pre-arbitration grievance step is appeal to T/PCCC's Board of Directors.  The FOP Labor Council appealed the discipline grievances, along with a third grievance, to the Board of Directors, which met with Plaintiff, FOP Labor Council representative Steve Rousey, and Thompson on March 26, 2003.  Thompson prepared a memo to all T/PCCC Board members "re Plaintiff work attendance", listing her absences and the discipline progression since 2001, noting Plaintiff had already missed 4 additional work days since her 20 day suspension ended on February 13, 2003 (Thompson Affidavit).  Plaintiff was absent February 27, when she reported "severe pain, taking pain medications", March 11 and 12, when Thompson granted her leave without pay for outpatient surgery, and March 21, when her husband reported her "in pain-possibly going to take her to ER". (Thompson Affidavit), Minutes of the 3/26/03 Board Meeting,).  Plaintiff and the Union asserted the prior discipline was not for just cause because her absences were for legitimate medical issues.  The Board concluded the discipline implemented followed the parties' agreement, and denied the grievances.  (Unsicker Dep. pp. 30, 31).  The Board also denied Plaintiff's third grievance, which contested the failure to accord her seniority during her 15 month absence in 1999-2000, and contended she was entitled to an additional week of vacation in 2003-2004.    28.    Plaintiff scheduled Friday, April 18, 2003 off as a vacation day on April 9, 2002, pursuant to the labor agreement's vacation scheduling provisions (Moldenhauer Dep. p. 24).  She had taken this date off, the anniversary of her deceased daughter's birthday, in both 2001 and 2002, as well (Moldenhauer Dep. p. 24).  In October, 2002, however, she exhausted her vacation and other benefit time, and was told by Director Thompson she could not have her priority vacation days, including April 18, 2003, off because she had no benefit time to cover the

days.  (Moldenhauer Dep. pp. 25, 26).  On April 18, 2003, Plaintiff absented herself from work with her husband reporting her as "sick".  (Attendance Records).  Two of the other telecommunicators on her shift, Van Saghi and Nitzschsee, had already scheduled April 18 off as vacation on Plaintiff's 8:00 a.m. to 4:00 p.m. shift, leaving one regular full time dispatcher, and one part time dispatcher, who already previously scheduled. (Thompson Dep. Exhibit 5).  Plaintiff had previously arranged a time trade to be off on her shift on Saturday, April 19, and was scheduled to be off Sunday, April 20 and Monday, April 21.  (Moldenhauer Dep. p. 24, Thompson Affidavit).  When Plaintiff returned on her next scheduled work day on April 21, 2003, Director Thompson gave her notice of an administrative interview in regards to her sick call on Friday, April 18, 2003, to be held April 23, at 3:00 p.m., apprising Plaintiff of her right to FOP representation at such interview.

29.     At the April 23, 2003 meeting, Moldenhauer denied abuse of sick leave privileges, maintaining she was legitimately sick as her husband had reported. (Moldenhauer Dep. p. 24, 25, Plaintiffs Admissions ¶1, Request to Admit 302, 303, 307).  On April 24, 2003, Director Thompson issued Plaintiff notice of termination, effective immediately, based upon the repeated warnings of problems of sick time abuse and excessive absences, and the past corrective, progressive discipline implemented pursuant to the collective bargaining agreement.  (Moldenhauer Dep. p. 43).  Thompson did not consult any of T/PCCC Board of Directors prior to his decision to discharge Plaintiff on April 24, 2004.

30.     Plaintiff filed an April 24 grievance contesting her termination as being not for just cause under the collective bargaining agreement.  The grievance was denied by Thompson at Step One of the grievance procedure.  Plaintiff subsequently requested

the FOP Labor Council seek a waiver by the T/PCCC Board of the Step 2 procedure requiring presentation to T/PCCC's Board, and that FOP proceed to arbitration. (Moldenhauer Dep. p. 14, Thompson Affidavit). Plaintiff was later notified by letter by the FOP Labor Council's attorney assigned to her file that they had decided her grievances did not merit arbitration under the parties' Agreement. (Moldenhauer Dep. p. 16, 17).

31.  Plaintiff filed one, and only one, charge of discrimination with the U.S. Equal Employment Opportunity Commission, August 18, 2003, a copy of which was appended to her initial complaint and incorporated by reference in her First and Second Amended Complaints. The charge names only Tazewell-Pekin Consolidated Communications Center, 1130 Koch Street, Pekin, Illinois, as the Employer, and was served on T/PCCC at that address by the EEOC by Notice of Charge of Discrimination dated August 20, 2003. The charge was received by Director Thompson and referred to legal counsel for response. T/PCCC's Board members were not notified of the charge, or provided a copy of it (Huston Dep. p. 13, Tebben Dep. p. 8). Defendant Tazewell County was not named or referred to in the charge, or served with a copy by the EEOC (Moldenhauer Dep. p. 10, 11, Exhibit 1). The charge did not include any claim of retaliation, instead citing only disability discrimination between 1/1/1999 and 4/18/2003. (8/18/04 Charge attached to Complaint, EEOC Intake Complaint produced by Plaintiff pursuant to Defendant's Request to Produce).

32.  At Plaintiff's request, the EEOC issued Notice of Right to Sue on her August 18, 2003 charge of discrimination on April 22, 2004, sending a copy of the notice to Respondent named in such charge, T/PCCC, at its address. A copy of such right to sue is attached to Plaintiff's initial Complaint, and incorporated by reference in her first

13

and second amended complaints.   Tazewell County had no notice of any charge against it, nor was there any conciliation of Plaintiff's charge under the ADA undertaken by EEOC (Moldenhauer Dep. 10, Exhibit 2, Plaintiff's Complaint.

33.    Immediately prior to the April 18, 2003 incident which resulted in her April 24, 2003 dismissal, Plaintiff requested two days off without pay in March, indicating she had scheduled out patient surgery on her day off (Moldenhauer Dep. p. 27, Exhibit 4). Her request was approved by Director Thompson.

34.    With respect to T/PCCC's operations, Executive Director Thompson is employed by the T/PCCC Board to run the Center and has control of its day to day operations and labor relations.   He reports only to T/PCCC's Board of Directors, who set T/PCCC's policies and annual budgets, authorize major expenditures, and approve the collectively bargained agreements with the FOP Labor Council negotiated by Thompson.    Thompson does not report to, or interact with Tazewell County's Administrator, or Board of Supervisors, relative to operations of T/PCCC.   Thompson does not report to, or consult with, Pekin's City Manager regarding T/PCCC's operations.   T/PCCC revenues paid to T/PCCC for its services by the Tazewell County Sheriff are included in the budget of the Tazewell County Sheriff's Department, which is approved annually by Tazewell County's Board.   T/PCCC's budget is not submitted or approved by anyone other than T/PCCC's Board of Directors (Thompson Affidavit).

35.    Prior to moving to its current facility at 1103 Koch Street in 2001, which T/PCCC leases from the City of Pekin, T/PCCC maintained its operations in an abandoned fire station adjacent to the Former Pekin City Hall, located next to the telephone company's main facility in Pekin.   The building was owned by the City of Pekin, and included in an agreement between T/PCCC and the City under which

14

T/PCCC contracted for accounting, payroll and financial services to be provided to T/PCCC by Pekin's accounting department, and leased its operations center from the City.   Under that Agreement, T/PCCC also contracted with Pekin to participate in its employee benefit plans, including health and life insurance, Illinois Municipal Retirement Fund, and workers compensation, which T/PCCC paying the costs of the participation of its employees in those benefit plans.   With respect to health insurance, T/PCCC switched to coverage provided by John Deere Health in January, 2003 because it could obtain comparable coverage at a reduced cost (Tebben Dep. p. 14).

36.    Plaintiff asserts in her second amended complaint that "Plaintiff was fired by her employer by reason of her absence due to her disabling condition" (Second Amended Complaint ¶27), and that "upon these periods of (acute) flare-ups, she must take pain medications, bed rest, no food or drink and is occasionally hospitalized. These flare-ups require her to miss work, usually only for one day unless hospitalized for a longer time."  (First Amended Complaint Count I, ¶3).  Plaintiff admits she is totally disabled, and unable to work during these periods.  (Moldenhauer Dep. p. 101).

37.    Plaintiff admits absence control is a vital issue at T/PCCC due to the nature of its operations, and an issue in negotiations between T/PCCC and the FOP Labor Council (Moldenhauer Dep. p. 32).   The collective bargaining agreement, specifies at Article 17 "Leave Time", Section 6 "Sick Leave" neither the Union for the Employer condones the abuse or excessive use of sick leave.   Documented sick leave abuse may result in progressive discipline, up to and including discharge; and at Section 9 "Time Off Requests" "Requested for time off shall normally be made as far in advance as possible, barring unforeseen or exigent circumstances."   T/PCCC has implemented a Standard Operating Procedure (Thompson Affidavit ¶14, Exhibit B)

15

governing "Sick Time Calls."  Any employee who was scheduled to work and wanted to take sick leave must call T/PCCC and speak to the Shift Supervisor on duty, who is to complete a sick time card.  The supervisor is instructed to document the person calling, time and date of the call, hours to be missed, inquire into and document the reasons given for the absence, and sign the card, which is then directed to Director Thompson (Moldenhauer Dep. ̩, Thompson Affidavit ¶18, Exhibit 1).  Further, T/PCCC's Rules at ¶227 "Illinois/Condition (Physical/Mental) Sick Leave", address requirements for employee notice, and verification of absences because of the inability to perform. (Thompson Affidavit).

38.    Plaintiff filed a complaint with the U.S. Department of Labor on or about January 22, 2003 for violations of the Family and Medical Leave Act (Second Amended Complaint ¶25).  In January 2003, T/PCCC's Board of Directors were informed of pending litigation by Thompson, and that the Department of Labor contested the position of T/PCCC's attorneys that T/PCCC did not have the requisite number of employees under the FMLA to be covered by that statute, Exhibit 33, 37).  T/PCCC's Board instructed Thompson to proceed based upon the opinion of counsel that FMLA did not apply to its operations.

Based upon the undisputed material facts, Defendants submit they are entitled to summary judgment dismissing Plaintiff's claims in whole or part.  Defendants file herewith a Memorandum of Points and Authorities in support thereof.

TAZEWELL-PEKIN CONSOLIDATED
COMMUNICATIONS CENTER; TAZEWELL
COUNTY, ILLINOIS; STEVEN F. THOMPSON,
JAMES UNSICKER and ROBERT HUSTON,
Defendants


By   s/s Patrick A. Murphy
          Patrick A. Murphey
        For Miller, Hall & Triggs


Patrick A. Murphey
Darin M. LaHood
Miller, Hall & Triggs
416 Main Street, Suite 1125
Peoria, IL  61602-1161
(309) 671-9600

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| **DENISE N. MOLDENHAUER,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 04-CV-1169** |
| | ) | |
| **TAZEWELL-PEKIN CONSOLIDATED** | ) | |
| **COMMUNICATIONS CENTER; CITY OF** | ) | |
| **PEKIN; TAZEWELL COUNTY; STEVEN F.** | ) | |
| **THOMPSON; DAVID TEBBEN; JAMES** | ) | |
| **UNSICKER, ROBERT HUSTON; and** | ) | |
| **TIMOTHY GILLESPIE,** | ) | |
| **Defendants.** | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing to

the following: John A. Slevin, Vonachen, Lawless, Trager & Slevin, 456 Fulton, Suite

425, Peoria, Illinois 61602.


                                        s/s Patrick A. Murphey
                                        Patrick A. Murphey #
                                        Attorney for Defendants
                                        Miller, Hall & Triggs
                                        416 Main Street, Suite 1125
                                        Peoria, IL 61602
                                        Telephone: (309) 671-9616
                                        Facsimile:  (309) 671-9616
                                        Email: patrick.murphey@mhtlaw.com