E-FILED
Wednesday, 16 August, 2006  01:46:21 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| DENISE N. MOLDENHAUER,    )<br>                    Plaintiff,    )<br>                                )<br>vs.                             )<br>                                )<br>TAZEWELL-PEKIN CONSOLIDATED     )<br>COMMUNICATIONS CENTER; CITY OF  )<br>PEKIN; TAZEWELL COUNTY; STEVEN F. )<br>THOMPSON; DAVID TEBBEN; JAMES   )<br>UNSICKER, ROBERT HUSTON; and    )<br>TIMOTHY GILLESPIE,              )<br>                    Defendants. ) | Case No. 04-CV-1169 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS
T/PCCC AND TAZEWELL COUNTY'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to local rule, Defendants T/PCCC and Tazewell County submit the following points and authorities in support of their Motion For Summary Judgment.

I.   <u>Count I cannot be maintained against Tazewell County under the ADA as a "joint employer" of Plaintiff</u>.

In her First Amended Complaint, Plaintiff alleges "that since August 1, 1983, she has been employed jointly by TAZCOM, PEKIN and TAZEWELL (Count I ¶2).  The facts do not support her assertion.  Plaintiff admits she was employed by T/PCCC as a dispatcher telecommunication from August, 1983 until her termination effective April 24, 2003.  T/PCCC is an Illinois not for profit corporation established pursuant to the Illinois General Not For Profit Corporation Act, 805 ILCS 105/101.01 – et. seq.  Its By-Laws provide for a perpetual Board of Directors in accordance with the Illinois General Not For Profit Corporation Act.  Such Board, under Illinois law, is not a separate entity, but rather functions as the governing authority of the corporation, who, as fiduciaries, have

an undivided duty of loyalty to act in the interest of the corporation, and are not legally separate from it. Willmschen v. Trinity Lakes Improvement Association, 362 Ill. App. 3d 546, 298 Ill. Dec. 840, 840 NE2d 1275 (2d Dist. 2005). While Board members may be individually liable under Illinois law in tort for acts in which they participated, the ADA does not authorize suit or provide for liability against individual agents of a corporation. EEOC v. AIC Security Investigations, Inc., 55 F3d 1276, 1279-82 (7th Cir. 1995), Williams v. Banning, 72 F 3d 552 (7th Cir. 1995).

Further, the Seventh Circuit has repeatedly rejected the attempts to sue separate corporate entities under the federal statutes, except in narrowly defined circumstances. EEOC v. State of Illinois, 69 F 3d 167 (7th Cir. 1995); Papa v. Katy Industries, Inc., 166 F 3d 937, 941 (7th Cir. 1999); Worth v. Tyer, 276 F 3d 249 (7th Cir. 2001). In the later cases, the Seventh Circuit has made clear it will treat separate entities as employers for liability under the ADA, Title VII, ADEA and other civil rights statutes only where the entities have not observed corporate formalities, and facts exist to pierce the corporate veil; where the purpose of establishment of separate entities is to evade statutory duties; or where the parent directed the discriminatory act committed .249 (7th Cir. 2001). Papa, supra, Worth, supra. ("Nothing in Papa limits its application to the tiny employer context. Rather, we stated that the principals governing affiliate liability shall apply "across the full range of American law" unless a particular statute provides an alternative test Id. At 941").

Here, there is no evidence that, when Tazewell County and the City of Pekin entered into an intergovernmental agreement to create a consolidated communications center to provide 911 emergency communications services within Tazewell County to serve citizens, there was any intent to evade the ADA or the FMLA. Worth, supra;

Papa, supra.  The ADA was not enacted until 14 years later, in 1990, and the FMLA in 1992.  Public Employee Retirement System of Ohio v. Betts, 492 U.S. 158 (1989).  There is also no evidence T/PCCC, or its Board of Directors, failed to observe the corporate formalities, or that it is necessary to pierce T/PCCC's corporate veil to prevent fraud or injustice.  Worth, supra.  T/PCCC employed fifteen or more employees during the years Plaintiff was employed by it, and unquestionably employed Plaintiff until her April 24, 2003 termination by its Executive Director, Thompson.  Thompson clearly had authority from T/PCCC's Board of Directors to hire and fire T/PCCC employees, as well as to set their terms and conditions of employment, as part of his responsibility to operate the Center.  He is clearly T/PCCC's authorized agent, and T/PCCC is liable for his actions under respondent superior principals under the ADA.  Tazewell County is not a successor to T/PCCC, which still operates.

Finally, there is no evidence Tazewell County directed Thompson, or T/PCCC, to discharge/discipline Plaintiff, or engage in any of the other actions alleged by Plaintiff to violate the ADA.  Worth, supra; Papa, supra.  Plaintiff alleged in her Complaint that two of the members of T/PCCC's Board of Directors "are appointed" by Tazewell County.  In fact, T/PCCC's bylaws designate and control who shall serve as the corporation's directors, providing for a perpetual 4 person Board consisting of the individuals holding three elected offices, Tazewell County Sheriff, the Chairperson of the Board of Supervisors of Tazewell County, and the Mayor of Pekin, and one appointed office, Pekin Police Chief, or any individual these individuals may appoint to serve in their place.  The individuals who hold those offices during the relevant times elected to volunteer themselves, rather than designate someone else.  They served on T/PCCC's Board as the directors of that not for profit corporation to act in its interests.

3

Willmschen, supra.  Moreover, only one of these four officials is legally a County of Tazewell official, for the Sheriff is an independent office responsible to the voters, not the Tazewell County Board.  Carver v. LaSalle County, 243 F3d 379 (7th Cir. 2001).  Neither the Sheriff, nor Board Chairman Unsicker acts officially, but rather as individuals in volunteering on T/PCCC's Board.  Neither Thompson, nor T/PCCC's Board of Directors, report to Tazewell County's Board of Supervisors, nor did the Board of Supervisors direct, authorize sanction or ratify any actions by T/PCCC relating to T/PCCC's employees, including Plaintiff.  Tazewell County did not jointly employ Plaintiff as alleged in the First Amended Complaint, and there is no basis to impose liability upon Tazewell County for the actions of T/PCCC in this case.  Papa, supra, Worth, supra, EEOC v. State of Illinois, supra.

II.     Plaintiff Did Not Comply With the Prerequisites of the ADA and Cannot Sue Tazewell County Under the ADA.

In its April 18, 2005 Order denying Defendants' Motions to Dismiss ADA claims against Tazewell County and the City of Pekin, this Court noted that Plaintiff alleged in her First Amended Complaint that "both Pekin and Tazewell were aware of [the EEOC] charge being filed and were given opportunity (sic) to participate in conciliation proceedings, but elected not to," holding such allegation fit within an exception to the rule that a party not named in an EEOC charge may not be sued under Title VII.  Schnellbacker v. Baskin Clothing Co., 887 F 2d 124, 126 (7th Cir. 1989).  In fact, the only charge Plaintiff filed with EEOC, filed on August 18, 2003, following her April 24, 2003 discharge, names only T/PCCC as her employer.  It makes no reference to Tazewell County.  The charge was served on T/PCCC at its addresses, and responded to by T/PCCC Director Thompson and legal counsel.  Thompson did not inform

4

T/PCCC's directors of the charge, and there is no evidence Tazewell County ever received a copy of the charge, or notice Plaintiff sought to proceed against it, as opposed to T/PCCC.  <u>Olsen v. Marshall & Ilsbey Corp</u>., 267 F 3d 597, 604 (7th Cir. 2001); <u>Schnellbacker v. Baskin</u>, <u>supra</u>, Plaintiff admits she requested the EEOC issue her a right to sue letter, and that EEOC never initiated any conciliation effort.  Plaintiff clearly failed to exhaust administrative remedies as required by the ADA with respect to the claim she now seeks to state under the ADA in Counts I and III against Tazewell County.  Tazewell County is entitled to summary judgment dismissing those claims for that reason.  <u>Olson</u>, <u>supra</u>.

III. <u>Count III's ADA Retaliation Claim Must Be Dismissed For Failure to Exhaust ADA's Administrative Prerequisites</u>.

Here, the only charge Plaintiff filed, on August 18, 2004, after her April 24, 2004 discharge by T/PCCC, alleged that her discharge and the prior progression of discipline, constituted disability discrimination and a failure to reasonably accommodate her under the ADA.  Not only did the charge not name Tazewell County as her employer, it did not allege retaliation by either Defendant Tazewell County, or Defendant T/PCCC.  Noting it did not read Plaintiff's First Amended Complaint to allege a claim of retaliation under the ADA in its Order of April 18, 2005, this Court gave leave to plead such claim, which Plaintiff did in her Second Amended Complaint.  Defendants responded by answer pleading Plaintiff's failure to exhaust her administrative remedies.  Clearly, as respects her ADA claims for retaliation, she did so fail.  The only charge she filed with EEOC occurred after her April 24, 2004 discharge.  It alleged disability discrimination in a course of conduct ending with her April 24, 2004 discharge, not retaliation.  <u>McKenzie v. Illinois Department of Transportation</u>, 92 F 3d 473, 443 (7th Cir. 1996); <u>Heuer v. Weil-</u>

5

McLain, 203 F 3d 1021, 1023 (7th Cir. 2000). Nor does the Second Amended Complaint contest any act or occurrence after the August 18, 2003 charge was filed with EEOC, within the exception for post-charge retaliatory acts. Plaintiff therefore clearly failed to exhaust her administrative remedies in accordance with the requirements of the ADA, as it relates to the ADA retaliation claim she seeks to assert against Tazewell County and T/PCCC, and Defendants are entitled to summary judgment dismissing such claim for that reason.

IV.    Plaintiff's ADA Claims Arising More Than 300 Days Before Her August 18, 2004 Charge Are Barred.

Under the ADA, which incorporates Title VII's prerequisites, Plaintiff may not maintain a claim for events occurring more than 300 days before her August 18, 2003 charge, or October 20, 2002. Lucas v. Chicago Transit Authority, 367 F 3d 714, 721-23 (7th Cir. 2004); Stepney v. Naperville School District 203, 392 F 3d 236, 240-241 (7th Cir. 2004). Plaintiff alleges she requested "reasonable accommodation" to be allowed to take sporadic unscheduled days off without notice, and without being subject to discipline for abuse or excessive use of sick leave privileges by T/PCCC, but that before and after her May 24, 2004 request, she was subject to a progression of disciplinary actions, culminating with her April 24, 2003 termination. While the termination, and several disciplinary suspensions from duty occurred within the 300 day period, those before October 20, 2003 did not. Under the ADA, her ADA claims in County I and III are therefore untimely as respects the events occurring before October 20, 2003, and Tazewell County and T/PCCC are entitled to summary judgment dismissing them. Lucas, supra; Stepney, supra.

V.  Plaintiff Cannot Maintain Her Claim Under The ADA Because She Is Not A Qualified Individual With A Disability.

As the Seventh Circuit reiterated in Hammel v. Eau Galle Cheese Factory, 407 F 3d 852, 855 (7th Cir. 2005), the ADA extends protections only to "qualified individuals" with a disability, and the employee bears the burden of proving this essential element in order to state a claim.  Accord, Waggoner v. Olin Corp., 169 F 3d 481 (7th Cir. 1999); EEOC v. Yellow Freight Systems, Inc., 253 F 3d 943 (7th Cir. 2001); DeVito v. Chicago Park District, 270 F 3d 532 (7th Cir. 2001); Jananovic v. In-Sink-Erator, 201 F 3d 894 (7th Cir. 2000).  According to Plaintiff, during the period following her return from leave January 4, 2001, through her discharge effective April 24, 2003, she suffered from chronic pancreatitis with acute flare ups, during which she was totally disabled, and had to miss work on an unscheduled, sporadic basis.  She was employed full time, five days on, followed by two days off.  She took twenty five (25) separate days off during calendar year 2001, and another thirty four (34) days off during the 2002 calendar year.  The collective bargaining agreement between her labor representative and T/PCCC prohibits both abuse of sick leave and excessive use of sick leave, and provides for corrective progressive discipline to give employees notice of, and the opportunity to conform, to expected performance standards.  Plaintiff received a written reprimand on April 26, 2002 for excessive absences from work, followed by a one day suspension May 16, 2002.  When Plaintiff was absent an additional 15 individual days after that suspension, T/PCCC suspended her for an additional five (5) days for excessive absenteeism November 6, 2002, and an additional twenty (20) day disciplinary suspension due to continued patterned absences from work on January 16, 2003.  Plaintiff missed an additional four days between the end of her suspension and a March

26, 2004 Step 2 grievance meeting, although two of the days were approved unpaid leave.  T/PCCC Board denied her grievances contesting the November 6 and January 16 suspensions as not being for "just cause" under the Agreement.  Her April 24, 2003 termination followed an incident on April 18, 2003, when she had her husband reported her off as "sick" the day before she had traded time to be off before her two regularly scheduled days off.  She had scheduled April 18 off as a priority vacation day, but had previously been told her benefit time had been exhausted, and her previously scheduled vacation days for the rest of the year were denied.  When T/PCCC examined her records, she had taken April 18 off in 2001 and 2002, as she admits.

While the records of her absenteeism document many of her absences were for reasons which suggest no relationship to any pancreatic condition, Plaintiff alleges her termination was because of absences necessitated by her disability.  Even assuming the truth of that assertion, her excessive absenteeism rendered her not a qualified individual.  EEOC v. Yellow Freight, supra; Waggoner, supra.  As the Court reiterated "requests for unlimited sick days, if needed [,] without being penalized," are not reasonable as a matter of law."  Yellow Freight, supra.  Here, T/PCCC provides emergency communications-dispatch services for thirty-eight emergency service clients twenty-four hours a day, seven days of every week.  It relies upon sixteen full time employees to be there when scheduled to take 911 calls when the calls come in.  Plaintiff has not contended any employee had comparable attendance problems, or that T/PCCC failed to apply the collective bargaining Agreement's obligation to maintain attendance only to her.  In fact, she admits the issue was a frequent point of negotiation between T/PCCC and her union.  "It should not require saying that generally attendance is a requirement of a job."  Waggoner, supra.  Here, Plaintiff could not maintain the

8

attendance expected, and was frequently absent on a sporadic basis without notice sufficient to schedule her off duty for the periods she could not work. Tazewell County and T/PCCC are entitled to judgment because she cannot prove she is a qualified individual with a disability under the ADA for that reason.

VI.     Plaintiff Cannot Establish She Is An Eligible Employee Under the FMLA.

To state a claim under the FMLA, Plaintiff must prove she is an "eligible employee", that the defendants were employers covered by the FMLA, and that she was entitled to leave under the FMLA. Smith v. University of Chicago Hospital, 9 WHC 2d 406 (N.D. Ill. 2003). 29 USC §2611(2)(A), defines "eligible employee" as an employee who has been employed – (i) for at least 12 months by the employer with respect to whom leave is requested under Section 2612 of this title," while §2611(B) specifies "eligible employee" does not include – (ii) any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." Section 2611(4)(A) limits the definition of employer to "any person engaged in commerce or in an industry or activity affecting commerce who employs 50 or more employees for each working day during each 20 or more calendar workweeks in the current or preceding calendar year," although employer separately "includes any public agency" as defined in Section 203(x) of this title" without regard to its number of employees.

T/PCCC never employed 50 or more employees in either 2003 or 2004, having at most 23 full time and part time employees at its worksite located at 1103 Koch Street in Pekin, Illinois. Plaintiff has alleged she was "jointly employed by T/PCCC, the City of Pekin and/or Tazewell County." The latter are public employers who are covered by

9

FMLA without regard to the number of employees. The Seventh Circuit has made clear each public employer is to be treated as a separate entity. Fain v. Wayne County Auditors Office, 388 F3d 257 (7th Cir. 2004). But Plaintiff never worked for, or at, Tazewell County. T/PCCC, Inc. is not a department of Tazewell County, but an independent not for profit corporation organized under the General Not For Profit Corporation Act. It has its own revenues and budget, its own Board of Directors, its own office and employees, its own operations, and its own debts and liabilities. It may sue and be sued in its own name. It admittedly employed Plaintiff from 1983 until her April 24, 2003 termination.

While the County of Tazewell is a public agency, as a matter of law T/PCCC is not. Briggs v. Chesapeake Volunteers In Youth Services, Inc., 68 F Supp 2d 711 (ED VA 1999). There, relying upon the Supreme Court's decision in NLRB v. Natural Gas Utility District, 402 US 600 (1971), the Court in Briggs found a not for profit corporation was not a public agency subject to the Fair Labor Standards Act (FLSA) despite its receipt of funding from government, its Board was picked from a pool appointed by public officials, or that the corporation contracted with the City of Chesapeake for payroll and administrative services for its employees and operations. For reasons already addressed above, relying upon Worth v. Tyer, supra and Papa v. Katy Industries, supra, Tazewell County is not an employer of T/PCCC's employees. Plaintiff has not asserted that these Seventh Circuit decisions, although under Title VII, should not be applied to the FMLA, as well as the ADA. In point of fact, they are appropriately applied under the FMLA, for it defines employer to limit the term to non-public employers who do not employ 50 or more, as well as engrafting a limitation of 50 employees at the employment worksite at which leave is requested on "eligible employee" for both non-

public and public employers. 29 UCS §2611 (2)(B)(ii) and (4)(A)(i), and ii and (B). See it this regard, <u>Harbert v. Healthcare Services Group</u>, 391 F3d 1140 (10 Cir. 2004), cert denied _____ US __ (2005), recognizing Congress' intent to adopt exclusions for not only the small employer, but small operations of larger employers, even though it recognized by doing so the Act excluded nearly fifty percent of potential employees, in invalidating the FMLA regulations regarding worksites relative to "joint employers." Even applying the law in those circuits which do not follow <u>Papa</u> and <u>Worth</u>, however, there is clearly no "joint employer" relationship here. <u>Moreau v. Air France</u>, 356 F3d 942 (9th Cir. 2005); <u>Morrison v. Magic Carpet Aviation</u>, 383 F 3d 1253 (11th Cir. 2004). T/PCCC acts independent of Tazewell County in relation to its operations and its employees. While it clearly was Plaintiff's employer, it is not an employer subject to the FMLA because it is not a public agency, and does not employ 50 or more employees, or even half that number. Tazewell County has the ability to cease doing business with T/PCCC, should the Tazewell County Sheriff elect to contract with a third party other than T/PCCC for dispatch services, or set up his own in house dispatch center. T/PCCC does not lease employees to Tazewell County, nor do T/PCCC employees work at facilities owned or operated by Tazewell County. Tazewell County has no control over T/PCCC's budget beyond its ability to cease doing business with, and paying T/PCCC, for services rendered. It has no control over who T/PCCC's Director hires or fires, or what terms of employment he negotiates with the employees' exclusive bargaining representative. In essence, Plaintiff's argument is that T/PCCC's four member Board of Directors are governing authorities of Tazewell County, when in fact the individuals who served as T/PCCC's Board were elected officials who volunteered service to T/PCCC as directors, in addition to their service as elected officials, rather

than designate someone else to serve on T/PCCC's Board as the By-Laws permit them to do. Plaintiff seeks to sue these individuals as "individuals" for their conduct as members of T/PCCC's Board, not for any official acts as Sheriff, County Board Chair, Mayor, or Police Chief. However, she then turns around and asserts their actions as "individuals" on behalf of T/PCCC should be seen as official acts of a separate entity, which is a public agency.

Tazewell County did not jointly employ Plaintiff. Her employer until her discharge was T/PCCC. She recognized T/PCCC never employed 50 or more employees, or even half that number, and thus was neither an employer covered by the FMLA, nor was her worksite one which would make her an eligible employee under the FMLA's definitions. She seeks to expand the definition of Employer, and/or worksite to defeat Congress' intent to limit FMLA's impact upon a small employers like T/PCCC by arguing Tazewell County's employees can be considered employees at the worksite where she was employed. Yet there is no factual basis to contend T/PCCC has any control over Tazewell County or its employees, and <u>Harbert v. Healthcare Services Group</u>, <u>supra</u>, rejects to same type of gerrymandering to write Congress coverage limitations out of existence. T/PCCC is not a public agency, or an employer of 50 or more employees, and Plaintiff cannot establish 50 or more employees were employed by T/PCCC at its worksite, where Plaintiff worked. She cannot establish she is an eligible employee under the FMLA, and cannot maintain a claim against T/PCCC, or Tazewell County for that reason.

Wherefore, Defendants pray summary judgment be entered in its favor in accordance with its motion, and the claims asserted by Plaintiff be dismissed in accordance with this motion.

Dated this 15th day of August, 2006.

                    TAZEWELL-PEKIN CONSOLIDATED
                    COMMUNICATIONS CENTER; TAZEWELL
                    COUNTY, ILLINOIS; STEVEN F. THOMPSON,
                    JAMES UNSICKER and ROBERT HUSTON,
                    Defendants

                    By: /s/ Patrick A. Murphey
                         Patrick A. Murphey
                         For Miller, Hall & Triggs

Patrick A. Murphey
Darin M. LaHood
Miller, Hall & Triggs
416 Main Street, Suite 1125
Peoria, IL  61602-1161
(309) 671-9600

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| DENISE N. MOLDENHAUER,                                )<br>                        Plaintiff,    )<br>                                                          )<br>vs.                                                       )         Case No. 04-CV-1169<br>                                                          )<br>TAZEWELL-PEKIN CONSOLIDATED    )<br>COMMUNICATIONS CENTER; CITY OF    )<br>PEKIN; TAZEWELL COUNTY; STEVEN F.    )<br>THOMPSON; DAVID TEBBEN; JAMES    )<br>UNSICKER, ROBERT HUSTON; and    )<br>TIMOTHY GILLESPIE,                               )<br>                        Defendants.    ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: John A. Slevin, Vonachen, Lawless, Trager & Slevin, 456 Fulton, Suite 425, Peoria, Illinois 61602.

                                                        s/s Patrick A. Murphey
                                                        Patrick A. Murphey #
                                                        Attorney for Defendants
                                                        Miller, Hall & Triggs
                                                        416 Main Street, Suite 1125
                                                        Peoria, IL 61602
                                                        Telephone: (309) 671-9616
                                                        Facsimile:  (309) 671-9616
                                                        Email: patrick.murphey@mhtlaw.com