UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DENISE N. MOLDENHAUER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) Case No. 04-CV-1169 |
| TAZEWELL-PEKIN CONSOLIDATED COMMUNICATIONS CENTER, TAZEWELL COUNTY, CITY OF PEKIN, DAVID TEBBEN, TIMOTHY GILLESPIE, STEVEN F. THOMPSON, JAMES UNSICKER, ROBERT HUSTON | ) ) ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, CITY OF PEKIN, DAVID TEBBEN, and TIMOTHY GILLESPIE, by their attorneys, HEYL, ROYSTER, VOELKER & ALLEN, P.C., and for their Response to Plaintiff's Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure Rule 56 and Local Rule 7.1(D) of the Rules of the Central District of Illinois, states as follows:

**INTRODUCTION**

On August 31, 2006, Plaintiff filed her Response to Defendants' Motion for Summary Judgment ("Response"). In doing so, Plaintiff voluntarily withdrew her claims under the Americans with Disabilities Act, which constituted Count I and a portion of Count III of her Second Amended Complaint. All that remains of Plaintiffs' Complaint are her claims under the Family Medical Leave Act ("FMLA").

In tandem with her Response, on August 31, 2006, Plaintiff filed her own Motion for Summary Judgment, which incorporated by reference her Response it its entirety. Both Defendants'

**HEYL ROYSTER
VOELKER
&ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

1

and Plaintiff's Motion for Summary Judgment focus on the ultimate legal issue remaining in this case, whether the City of Pekin ("Pekin") is a "joint employer" under the FMLA. Plaintiff's Motion lacks legal argument and contained numerous documents that fails to establish Pekin as a joint-employer. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment.

## RESPONSE TO PLAINTIFF'S DISPUTED MATERIAL FACTS

The following responds to the material facts listed in Defendants' Motion for Summary Judgment that Plaintiff's dispute, which Plaintiff incorporated in her Motion for Summary Judgment.

7. Whether a formal written contract existed between Pekin and TPCCC regarding payroll and accounts payable is irrelevant and fails to account for the undisputed and uncontradicted testimony of Pekin Police Chief Gillespie and TPCCC Director Steve Thompson established that Pekin provided payroll and accounts payable services to TPCCC by agreement. (Defs.' Ex. G at p. 26; Defs.' Ex. H at p. 44.) Plaintiff's citation to former Pekin Mayor David Tebben's testimony is in error and misrepresents Tebben's statement "I have no knowledge of whether a written contract existed or did not." (Defs.' Ex. F. at p. 16.)

9. See response to paragraph number 7 *supra*. The undisputed and uncontradicted testimony of former Pekin Mayor David Tebben and Thompson established that Pekin provided group insurance and retirement benefits to TPCCC. (Defs.' Ex. F at p. 12; Defs.' Ex. H at 56.)

13. Thompson did not consult with any department or official of Pekin or Tazewell County regarding Plaintiff's excessive absences and suspensions in 2002-2003, other than consulting with TPCCC Board Members. (Defs.' Ex. H at p. 80.)

14. Plaintiff's own testimony establishes that her supervisors were Sue Vanasaghi, a former TPCCC shift supervisor, and TPCCC Director Thompson. (Def. Ex. E at p. 77.) Plaintiff also admitted that Pekin Police Chief Gillespie did not supervise her day-to-day work. (Defs.' Ex. E at p. 83.) The affidavit of former Pekin Police Chief Robert Burress is irrelevant as he was not chief during the relevant periods or issues of this litigation.

17. See response to paragraph number 14 *supra*.

52. Plaintiff testified that she called into sick to her department head at TPCCC, as opposed to Pekin because she did not work for a part of Pekin. (Defs.' Ex. E at p. 78-79.)

HEYL ROYSTER
VOELKER & ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

2

**REPLY TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS
CLAIMED TO BE UNDISPUTED**

Plaintiff's Motion for Summary Judgment, by incorporating her Response to Defendants' Motion for Summary Judgment, added 63 "Additional Material Facts Claimed to be Undisputed." Several of these facts are duplicative of those cited in Defendants' Motion for Summary Judgment. However, the majority of these additional facts stem from various documents that are immaterial to the legal issue before the court, whether Pekin controlled Plaintiff's work at TPCCC such that it was her employer or joint-employer under the FMLA. It is undisputed that TPCCC contracted with Pekin to provide administrative services, including payroll, group insurance, and retirement benefits. The fact that various documents list Pekin as the "employer" does not prove that Pekin exercised any control over Plaintiff's work at TPCCC and are therefore immaterial to the legal issue at bar. With this background, Defendants respond to each of Plaintiff's Additional Material Facts Claimed to be Undisputed as follows:

1. Material and disputed. This statement is not additional to the undisputed material facts already presented by Defendants' motion and attached exhibits. Further, the statement "a joint venture formed" is a legal conclusion, which does not accurately reflect that TPCCC is incorporated as an independent not-for-profit corporation in Illinois.

2. Material and disputed. The by-laws of TPCCC does not limit the establishment of a joint public safety communications system for the mutual benefit of Tazewell and Pekin only. Rather the overarching TPCCC Joint Public Safety Communications System Agreement recognized the need for TPCCC for the local governments within Tazewell County (Defs.' Ex. L.)

3. Immaterial. This statement is not additional to the undisputed material facts already presented. It is also irrelevant and does not go to the issue of whether Pekin is a joint-employer under the FMLA.

4. Material and disputed. A closer reading of the plain language of the TPCCC by-laws demonstrates that the TPCCC Board of Directors has the authority to designate an alternate if done so by writing.

5. Immaterial. This statement is not additional to the undisputed material facts already presented. It is also irrelevant and does not go to the issue of whether Pekin is a joint-

**HEYL ROYSTER
VOELKER
& ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

3

      employer under the FMLA.

6. Immaterial. See explanation in paragraph 5.

7. Immaterial. See explanation in paragraph 5.

8. Immaterial. See explanation in paragraph 5.

9. Material and undisputed.

10. Material and disputed. Plaintiff's statement relies solely upon her own affidavit and does not specifically identify to whom or where she delivered her application or which Pekin employees interviewed her. Rather, Plaintiff's application of employment, which is signed and dated by Plaintiff on June 10, 1983, is on a standard form without any indication that it is from the City of Pekin and no names are listed under the section "Interviewer Name and Comments." (See Ex. W attached hereto.) Rather, on the same date as her application of employment, June 10, 1983, Plaintiff signed and an employee fact sheet on TPCCC letterhead, which indicates that "The position is a non-civil service so the employee may be discharged at any time. The T/PCCC supervisor maintain the power of disciplinary action and can recommend employment and/or termination." (See Ex. X attached hereto at p. 2.)

11. Immaterial and disputed. Plaintiff's statement relies solely upon her own affidavit and fails to attach any of said pay stubs. Pekin does not dispute that it processed Plaintiff's payroll, but Pekin disputes the phrase "issued by" to the extent that it suggests that Pekin dictated the terms of Plaintiff's compensation.

12. Immaterial. See explanation in paragraph 5.

13. Immaterial and disputed to the extent that the statement suggests that Pekin authorized any of Plaintiff's pay raises. The documents show that TPCCC authorized any pay raises, not Pekin. (Pl.'s Exs. 32 and 38.)

14. Immaterial and disputed. TPCCC contracted with Pekin to provide for group insurance under Pekin's sponsored plans until 2002, at which point TPCCC obtained its insurance coverage from different vendors. (Defs.' Ex. G at p. 26; Ex. H. at pp. 18, 44-45, 53, 56-57; Ex. I at pp. 41-42; Ex. K at p. 13.)

15. Immaterial. See explanation in paragraph 5.

16. Immaterial and undisputed to the extent that Plaintiff was a participant in the Illinois Municipal Retirement Fund based on TPCCC's contracting with Pekin to provide such benefits. TPCCC paid for their employees' and Plaintiff's contributions. (Ex. H at p. 72.) Plaintiff did not join "as an employee of the City of Pekin," but rather as an employee of TPCCC.

17. Immaterial and undisputed to the issue of whether Pekin is a joint-employer under the FMLA. It is undisputed that TPCCC contracted with Pekin to provide insurance, benefits under the

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

4

       IMRF, and payroll services. (Defs.' Ex. G at p. 26: Ex. H at p. 44; Ex. I at p. 41; Ex. K at p. 13.)

18. Immaterial. See explanation in paragraph 17.

19. Immaterial. See explanation in paragraph 17.

20. Immaterial. See explanation in paragraph 17.

21. Immaterial. See explanation in paragraph 17.

22. Immaterial. See explanation in paragraph 17.

23. Immaterial. See explanation in paragraph 17.

24. Immaterial. See explanation in paragraph 17.

25. Immaterial. See explanation in paragraph 17.

26. Immaterial. See explanation in paragraph 17.

27. Immaterial. See explanation in paragraph 17.

28. Immaterial. See explanation in paragraph 17.

29. Immaterial. See explanation in paragraph 17.

30. Immaterial. See explanation in paragraph 17.

31. Immaterial and disputed. The undisputed and uncontradicted TPCCC Director Steve Thompson testified that TPCCC protocol for emergencies when neither he nor Tammy Conover were present was to contact him via cell phone, not the Pekin command staff. (See Defs.' Ex. H at p. 57-58.)

32. Immaterial. See explanation in paragraph 17.

33. Immaterial. See explanation in paragraph 17.

34. Immaterial. See explanation in paragraph 17.

35. Immaterial. See explanation in paragraph 17.

36. Immaterial. See explanation in paragraph 17.

37. Immaterial. See explanation in paragraph 17.

HEYL ROYSTER
VOELKER & ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

5

38. Immaterial and disputed. It is undisputed that Pekin provided Plaintiff with an identification badge, but the badge does not state that she serves as a 9/11 dispatcher **for** Pekin. The undisputed and uncontradicted testimony of former Pekin Mayor David Tebben was that the City issued identification badges to persons using Pekin buildings for security purposes and said badges were not limited to Pekin employees only. (Defs.' Ex. F at p. 16.) See also explanation in paragraph 17.

39. Immaterial and disputed. Plaintiff's Ex. 12 indicates that the document was in "DRAFT" form and does not indicate that it applied to TPCCC employees or was adopted by TPCCC.

40. Immaterial. See explanation in paragraph 17.

41. Immaterial and disputed. Defendants dispute the statement "To be eligible, one had to be an employee of the City of Pekin" as nothing in Plaintiff's Ex. 15 supports such an assertion. It is undisputed that TPCCC contracted with Pekin to provide benefits to TPCCC employees until 2002. (Defs.' Ex. H at 56-57.) See explanation in paragraph 17.

42. Immaterial. See explanation in paragraph 17.

43. Immaterial. See explanation in paragraph 17.

44. Immaterial and disputed.. It is undisputed that TPCCC contracted with Pekin to provide payroll and accounts payable services. (Defs.' Ex. G at p. 26: Ex. H at p. 44; Ex. I at p. 41; Ex. K at p. 13.) See explanation in paragraph 17.

45. Immaterial. See explanation in paragraph 17.

46. Immaterial. See explanation in paragraph 17.

47. Immaterial and disputed. Plaintiff's Exhibits 21 and 22 do not establish on its face in any way that Plaintiff was entitled to enroll in a Section 125 Flexible Spending Plan on the basis that her employer was Pekin. See also explanation in paragraph 17.

48. Immaterial. Nothing in Plaintiff's Exhibit 23 establishes that Plaintiff's computer lease "was made as an employee of the City of Pekin" other than that it is on a Pekin Payroll Office form. See also explanation in paragraph 17.

49. Immaterial. See explanation in paragraph 17.

50. Immaterial and disputed. Plaintiff's Exhibit 25 does not establish that Plaintiff's election was made as an employee of Pekin. See explanation in paragraph 17.

51. Immaterial and disputed. Plaintiff's Exhibit 26 does not establish that Plaintiff changed her beneficiary of her life insurance "by reason of her employment with the City of Pekin." See explanation in paragraph 17.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

6

52. Immaterial. See explanation in paragraph 17.

53. Immaterial. See explanation in paragraph 17.

54. Undisputed and immaterial. The State of Illinois' determination that the City of Pekin was Plaintiff's employer for unemployment benefits is a conclusion of law and is not dispositive of the issue of whether Pekin was a joint-employer under the FMLA.

55. Immaterial. See explanation in paragraph 17.

56. Immaterial. See explanation in paragraph 17.

57. Immaterial and disputed. Both Thompson and Conover testified without contradiction that they did not recall receiving notice from Plaintiff of her wanting to invoke FMLA rights on 5/24/2002. (Defs.' Ex. H at p. 39; Ex. I at p. 21.) Regardless, this statement is immaterial as to the issue of whether Pekin was a joint-employer under the FMLA.

58. Immaterial. See explanation in paragraph 57.

59. Immaterial and disputed. Plaintiff's statement solely relies upon her own affidavit, which contradicts her deposition testimony that she could not recall the reasons for her absences from work other than what was listed on her sick leave cards. (Defs.' Ex. E at pp. 29-30; Group Ex. N.) Regardless, this statement is immaterial as to the issue of whether Pekin was a joint-employer under the FMLA.

60. Immaterial as to the issue of whether Pekin was a joint-employer under the FMLA.

61. Immaterial as to the issue of whether Pekin was a joint-employer under the FMLA.

62. Immaterial. See explanation in paragraph 17.

63. Material and undisputed.

## ARGUMENT

1. **Plaintiff Fails to Put Forth Any Legal Argument That Pekin Controlled Her Work at TPCCC and Was Her Employer.**

Without citation to any statute, regulation, or case law, Plaintiff has failed to put forth any legal basis upon which this Court could find that Pekin was her employer. Instead, Plaintiff provided the court with five pages of descriptive narrative of the various documents listing Pekin as the "employer." As previously noted, none of these documents establish, as a matter of law, that Pekin

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

7

was her employer or that Pekin controlled her employment. Rather, these documents only provide evidence of an already undisputed fact, that TPCCC contracted with Pekin for the provision of payroll, accounts payable, and benefits services. Plaintiff has failed to show how the various payroll and benefit documents establish that Pekin controlled her employment or created an employee-employer relationship. Thus, the myriad of documents Plaintiff attached to her Motion are irrelevant to the present legal issue.

Plaintiff failed to present any legal argument regarding the test and standard in determining "employer" status under the FMLA. The FMLA protects eligible persons who work for a statutorily defined "employer," which includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). The Seventh Circuit has not addressed the scope of this provision in the context of the FMLA, so the court looks to cases interpreting similar language under the Fair Labor Standards Act ("FLSA"). *See, e.g.*, *Freemon v. Foley*, 911 F. Supp. 326, 330 (N.D. Ill. 1995) (holding that the FMLA tracks the FLSA word for word regarding the definition of the term "employer"). Under the FLSA, an entity is an "employer" if it "***had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation***." *See Caskey v. Colgate-Palmolive Co.*, 438 F. Supp. 2d 954, 962 (S.D. Ind. 2006) (citing *Smith v. Univ. of Chicago Hospitals*, 2003 WL 22757754 *6-7 (N.D. Ill. Nov. 20, 2003) (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987); *Eckert v. Schroeder, Joseph & Associates*, 364 F. Supp. 2d 326, 327-28 (W.D.N.Y. 2005) ("the language of 29 U.S.C. § 2611(4)(A)(ii)(I) has been interpreted by a majority of the Courts to allow for liability under the FMLA against entities or individuals that '***possessed the power to control the worker in question***.'")) (emphasis added). Status as an employer under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir. 1985).

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

8

Under these legal standards, Pekin did not have any supervisory authority or control over Plaintiff's day-to-day employment and therefore was not her employer. Plaintiff conceded that Pekin did not guide the manner and method of her day-to-day work. (Defs.' Ex. E at p.84.) It is undisputed that TPCCC Director Thompson and TPCCC Operations Supervisor Conover controlled the day-to-day operations of TPCCC, not Pekin or former Mayor Tebben or Chief Gillespie. (Defs.' Ex. H at pp. 8, 79; Ex. I at p. 8.) Pekin did not hire, evaluate, discipline, train, schedule, or fire Plaintiff. (Defs.' Ex. E at pp. 5, 29, 40, 44-45, 77, 84; Ex. H at p. 80; Ex. I at p. 8.) Even in their positions as Pekin representatives on the TPCCC Board, Plaintiff admitted that former Mayor Tebben and Chief Gillespie had no involvement in the day-to-day supervision of Plaintiff's work at TPCCC. (Defs.' Ex. E at p. 83; Ex. H at p. 83.)

In fact, it was TPCCC who hired, evaluated, and fired Plaintiff. (Defs.' Ex. E at p. 84; Ex. H at p. 80.) Plaintiff's position required skill and training provided by TPCCC, not Pekin. Operations Supervisor Conover testified that she was responsible for ensuring that personnel were certified in CPR, EMD, and Law Enforcement Agency Data System. (Defs.' Ex. I at p. 8.) The dispatchers at TPCCC were all union members with the Fraternal Order of Police ("FOP"), and their terms and conditions of employment were governed by the collective bargaining agreement that the FOP negotiated with TPCCC, which was the entity listed as the "employer." (Defs.' Ex. V.) Pekin did not participate in any way in the negotiation of the collective bargaining agreement that provided Plaintiff her essential terms and conditions of her employment at TPCCC.

Further, Pekin was not Plaintiff's employer because it was not responsible, in whole or in part, for the denial of Plaintiff's FMLA request. Plaintiff admitted that she did not interact with Pekin for her requests for sick leave. (Defs.' Ex. E at pp. 32-33.) The decision regarding whether to grant Plaintiff FMLA leave was made by TPCCC Director Steve Thompson only, not Pekin or any of its

HEYL ROYSTER
VOELKER & ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

9

representatives.

The undisputed testimony in this case indicates that neither Pekin nor its representatives supervised or controlled Plaintiff's employment at TPCCC. All the indicia of control and supervision point to only TPCCC as Plaintiff's employer. Plaintiff's description of various benefits, insurance, and payroll documents do not establish that Pekin was Plaintiff's employer under the FMLA. Even in considering these documents, Plaintiff has not established that it was Pekin who made the decisions regarding payroll or benefits. Rather, TPCCC made these determinations and Pekin merely provided the administrative services in processing the payroll and benefits. Accordingly, Plaintiff's Motion for Summary Judgment should be denied because Plaintiff cannot establish Pekin was her employer.

2. **Plaintiff Cannot Establish That Pekin Supervised Her Terms and Conditions of Her Day-to-day Work and Was Plaintiff's Joint-employer under the FMLA.**

   A.   **Pekin is not Plaintiff's Joint-Employer under the "Economic Realities Test."**

Plaintiff again fails to put forth any substantive legal arguments to support her argument, but instead Plaintiff relies upon the TPCCC Joint Public Safety Communications System Agreement and the TPCCC By-laws to somehow assert that Pekin is a joint-employer. Plaintiff's argument that by virtue of the fact that her job simultaneously benefits Pekin and Tazewell, Pekin is a joint-employer, misses the issue. Extending Plaintiff's logic would lead to the conclusion that because Plaintiff also simultaneously benefits each of the 37 entities that contract with TPCCC for dispatching services, each of these 37 entities are also joint-employers of Plaintiff and would be liable for TPCCC's employment decisions. Such a bootstrapping argument is without merit and manipulates the threshold requirements of the FMLA. Again, the relevant legal inquiry is whether Pekin possessed the authority to control Plaintiff's employment at TPCCC.

There is little Seventh Circuit case law interpreting joint employment under the FMLA. *Dinkins v. Varsity Contractors, Inc.*, 2005 WL 599979 at *6 (N.D. Ill. Mar. 10, 2005). However,

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

10

district courts in Illinois interpreting this issue have consulted the FLSA case law. *Id.* (citing *Sherry v. Protection, Inc.*, 981 F. Supp. 1133, 1135 (N.D. Ill. 1997). In *Dinkins*, the Northern District of Illinois used the "economic realities test" and focused on the power to fire an employee, which the court noted was "one of the hallmarks of the control possessed by employers." *Dinkins*, 2005 WL 599979 at *6 (citing *U.S. Dept. of Labor v. Lauritzen*, 835 F.2d 1529, 1536 (7th Cir. 1987)). The court also placed emphasis on the issue of control by assessing to what extent the alleged joint employer controlled employees by assigning, directing, and supervising tasks and duties.

The "economic reality" of Plaintiff's employment was that TPCCC controlled, assigned, directed, and supervised her work, not Pekin. Plaintiff's reliance on TPCCC's by-laws and provisions that the TPCCC Board has the duty "to make all administrative decisions concerning . . . the utilization of personnel" and that the chairman shall be responsible for the "day-to-day operation of TPCCC" is also unpersuasive and is contrary to the "economic reality" of this case. As discussed at length above, under the "economic realities" test, the facts of this case weigh heavily in favor of a finding that Pekin did not control or direct Plaintiff's work at TPCCC. The "economic reality" of the day-to-day operations of TPCCC was that the TPCCC Director had the power to hire, fire, and evaluate Plaintiff, not Pekin. The TPCCC Board exercised its responsibility over personnel by delegating its authority to supervise and control the day-to-day operations of TPCCC to the director, Steve Thompson. In fact, the undisputed testimony from TPCCC Board members indicates that they only met twice per year and that Thompson reported to them as necessary. The Board members served other official capacities that did not permit them to control or supervise the day-to-day operations of TPCCC. The undisputed testimony is that TPCCC Director Steve Thompson supervised the day-to-day operations, not the individual board members, Pekin, or Tazewell. The fact that Tazewell and Pekin entered into an intergovernmental agreement in 1976 and established by-laws

HEYL ROYSTER
VOELKER & ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

11

for TPCCC to create the entity does not necessarily correlate with the "economic reality" of the day-to-day operations of TPCCC during Plaintiff's employment at TPCCC in 2003. Thus, Plaintiff has failed to provide any basis by which Pekin controlled or supervised Plaintiff's employment at TPCCC.

### B.   Plaintiff Cannot Satisfy the Joint-Employer Test Under the FMLA.

Plaintiff also fails to demonstrate that Pekin is a joint-employer under FMLA under the joint-employer test of 29 C.F.R. § 825.106(a). Pursuant to the Department of Labor ("DOL") regulations, a joint employment relationship exists where "two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under the FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities." 29 C.F.R. § 825.106(a). The DOL regulations further provide that the determination of whether a joint employment relationship exists requires analysis of the following factors:

> Where the employee performs work which simultaneously benefits two or more employers . . . , a joint employment relationship will be considered to exist in situations such as:
>
> (1)   Where there is an arrangement between employers to share an employee's services or to interchange employees;
> (2)   Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> (3)   Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 825.106(a)(1)-(3).

Whether a joint employment relationship exists "is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality." 29 C.F.R. § 825.106(b). Under these factors, the facts weigh heavily in favor of finding that Pekin is not a joint employer. First, Plaintiff still has failed to put forth any evidence that Pekin and TPCCC share or interchange employees. Rather, the facts show that the employees of TPCCC and the employees of Pekin are

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

12

completely separate and have different supervisors. Second, Pekin does not act in the interest of TPCCC in relation to Plaintiff. Rather, Pekin only provides TPCCC administrative services in providing payroll and benefits as indicated by the myriad of documents Plaintiff relies upon. Third, as already discussed at length, the "economic reality" and undisputed facts are that Pekin was disassociated with respect to Plaintiff's employment and did not share any common control over the method or manner of her work, or terms and conditions of her employment. Plaintiff's reliance on TPCCC's by-laws are unavailing, as is Plaintiff's reliance on the affidavit of a former Pekin police chief who was not involved in any of the employment decisions at issue in this case.

## CONCLUSION

Plaintiff cannot establish, as a matter of law, that Pekin was her employer or a joint-employer under the FMLA. Plaintiff's submission of a sampling of documents from her personnel file do not in and of itself establish that Pekin was a joint-employer. The numerous documents Plaintiff provided listing Pekin as an "employer" are immaterial and irrelevant to the legal question of whether Pekin exerted control or supervision over Plaintiff's employment such that it acted as her employer. It is without surprise that these various documents exist given the fact that TPCCC contracted with Pekin to provide payroll and benefits services. Similarly, Plaintiff's reliance upon the intergovernmental agreement and by-laws of TPCCC do not present the "economic reality" or true nature of the employer-employee relationships at issue. Moreover, Plaintiff has not shown in what manner Pekin was responsible for TPCCC's employment decisions regarding Plaintiff's FMLA request. Therefore, because Plaintiff cannot establish Pekin as her employer or a joint-employer under the FMLA, her Motion for Summary Judgment fails. Accordingly, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment, and grant Defendants' Motion for Summary Judgment.

HEYL ROYSTER
VOELKER
&ALLEN

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

CITY OF PEKIN, DAVID TEBBEN, and
TIMOTHY GILLESPIE


BY: s/ Bradford B. Ingram  #3127206
Attorney for Defendant
Heyl, Royster, Voelker & Allen
124 S.W. Adams, Suite 600
Peoria, IL 61602
309-676-0400
309-676-3374  (FAX)
bingram@hrva.com

### CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2006, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| John Slevin<br>Voncachen, Lawless, Trager & Slevin<br>456 Fulton St., Suite 425<br>Peoria, IL 61602-1240<br>jslevin@vltslaw.com | Jeffrey E. Krumpe<br>Patrick A. Murphey<br>Miller, Hall & Triggs<br>416 Main Street, Suite 1125<br>Peoria, IL 61602<br>jeffrey.krumpe@mhtlaw.com |

s/ Bradford B. Ingram  #3127206
Attorney for Defendant
Heyl, Royster, Voelker & Allen
124 S.W. Adams, Suite 600
Peoria, IL 61602
309-676-0400
309-676-3374
bingram@hrva.com

.
JKK
G:\75\P1975\P1975PSJ 003 Response to Pls MSJ 092006.wpd

**HEYL ROYSTER**
**VOELKER**
**& ALLEN**

Suite 600
124 S.W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400