*For Review*

# LEASE

THIS AGREEMENT made and entered into this *10th* day of *December*, 2001, by and between THE CITY OF PEKIN, an Illinois municipal corporation, hereinafter referred to as "LANDLORD", and TAZEWELL/PEKIN CONSOLIDATED COMMUNICATION CENTER, an Illinois not-for-profit corporation, hereinafter referred to as "TENANT"; WITNESSETH:

The said LANDLORD, for and in consideration of the covenants and agreements hereinafter mentioned to be kept, observed and performed by the parties hereto, has demised and leased to said TENANT the Premises, as that term is defined herein, upon the following terms and conditions:

1. PREMISES. The TENANT shall lease from LANDLORD that portion of the Premises located at 1130 Koch Street, Pekin, Illinois, as shown on the diagram attached hereto as Exhibit A and incorporated herein by this reference (the "Premises"). LANDLORD will continue to occupy other portions of the Premises (the "LANDLORD Premises"), and certain portions of the Premises will be common areas ("Common Areas").

2. TERM. TO HAVE AND TO HOLD the above-described Premises unto the said TENANT for the full period of five (5) years, and which said term shall commence on TENANT's occupancy of the demised Premises (the "Commencement Date"), and terminate on the fifth anniversary of the Commencement Date.

3. PURPOSE. The Premises hereby leased are to be used for the operation of a communication center and other related uses and for no other purpose without the consent of the LANDLORD, which shall not be unreasonably withheld.

4. RENTAL. TENANT shall pay as rental for the Premises during the initial term hereof the sum of Eight Hundred Fifty-Five ($855.00) Dollars for each month thereof, and which said rent shall be payable on the 1st day of the monthly period, with the first payment being due on the Commencement Date. In the event the Commencement Date falls on a day other than the

DEFENDANT'S EXHIBIT C

first day of a month, then such initial rent payment shall be prorated to the first day of the succeeding calendar month. Payments to be made to LANDLORD shall be made to LANDLORD at 1103 Koch Street, Pekin, or at such other place as LANDLORD may hereafter designate in writing.

5. <u>TAXES</u>. Because LANDLORD is a governmental entity, no taxes are assessed against the Premises. In the event that taxes are assessed against the Premises, such taxes shall be shared by LANDLORD and TENANT on a prorated basis as follows: TENANT to pay one-third, LANDLORD to pay two-thirds.

6. <u>LANDLORD'S DUTY TO MAINTAIN</u>. LANDLORD shall maintain in good condition the roof, sidewalls and foundation, the exterior walls, and the structural portions of the building. LANDLORD shall also maintain the common areas in a presentable condition. The costs of maintaining these items shall be shared by LANDLORD and TENANT on a prorated basis, as follows: TENANT to pay one-third, LANDLORD to pay two-thirds.

7. <u>TENANT'S DUTY TO MAINTAIN</u>. Except as provided above, TENANT shall keep the interior of the Premises in a presentable condition and shall paint the same when reasonably required. TENANT shall replace burnt-out electric lamps and shall be responsible for minor repairs of water faucets and flush valves on the demised Premises. TENANT shall also pay for any damages which result from careless or harmful actions of the TENANT or TENANT'S employees. TENANT shall also maintain the doors and windows in the Premises.

8. <u>HVAC/ELECTRICAL EQUIPMENT</u>. TENANT shall install, at its sole expense, certain heating, ventilation and air conditioning equipment and electrical equipment, as described in more detail on Exhibit "B" attached hereto and incorporated herein by this reference. TENANT shall maintain and repair the HVAC equipment servicing the Premises. LANDLORD shall maintain the HVAC equipment servicing the remainder of the building.

9. <u>COMPLIANCE WITH REQUIREMENTS AND USES PROHIBITED</u>. TENANT shall comply with all lawful requirements of the local Board of Health, Police and Fire

Departments and governmental authorities respecting the manner in which TENANT uses the leased Premises. TENANT agrees that the Premises shall not be used for any purpose or business which increases the fire or extended coverage insurance rate. TENANT further agrees that TENANT will not injure, overload, or deface the said building, nor permit the same or any part thereof to be injured, defaced or overloaded and will not permit or suffer any noise, noxious or offensive trade, business or occupation, or any heavy manufacturing to be carried on the Premises or permit the same to be occupied or used for any immoral or illegal purposes whatsoever.

10. ALTERATIONS BY TENANT. Except for the alterations described in Exhibit "B" hereto, TENANT shall not alter the interior of the building in excess of $5,000.00 without the written consent of LANDLORD. All additions, improvements, equipment, and fixtures placed in or on the leased Premises by TENANT shall at all times be and remain the personal property of TENANT, and TENANT shall have the right to remove said additions, improvements, equipment, and fixtures at any time during the term hereof and also within thirty (30) days after expiration or earlier termination of this lease; provided, however, that TENANT shall repair all damage to the leased Premises caused by such removal, and provided further that any addition, improvement, or fixture that shall have been so affixed to the leased Premises as to become an integral part thereof shall cease to be the property of TENANT and shall, on being so affixed, become a part of the leased Premises and expiration or earlier termination of this lease shall belong to LANDLORD without compensation to TENANT. Any property not removed as herein provided shall be deemed abandoned by TENANT and shall become the absolute property of Lessor without compensation to TENANT.

11. CONDITION OF BUILDING. LANDLORD and TENANT acknowledge that the Premises to be leased to TENANT are in tenantable condition as of date of possession.

12. PUBLIC LIABILITY INSURANCE. LANDLORD covenants and agrees that LANDLORD will, at LANDLORD'S expense, carry with a responsible insurance company or

companies or through its self insurance program, insurance against loss, suits for damages, claimed to be directly or indirectly, in whole or in part due to the happening of any accident in or about the Common Areas and the LANDLORD Premises caused by any act or neglect of TENANT or LANDLORD. TENANT covenants and agrees that TENANT will, at TENANT'S expense, carry with a responsible insurance company or companies, insurance against loss, suits for damages, claimed to be directly or indirectly, in whole or in part due to the happening of any accident in or about the demised Premises caused by any act or neglect of TENANT or LANDLORD. All such insurance policy or policies or self insurance program shall have a minimum limit of $300,000 for bodily injury to any one person and $500,000 for bodily injury in the aggregate, and also a minimum limit for property damage of $50,000.

13. STRUCTURE INSURANCE. LANDLORD shall insure the LANDLORD Premises and Common Areas and shall hold TENANT harmless for liability to said LANDLORD Premises. TENANT shall insure the demised Premises, and shall hold LANDLORD harmless for liability to said demised Premises. TENANT agrees to apply the proceeds of such insurance for the demised Premises to rebuild and repair the demised Premises, or, if this Lease is terminated pursuant Paragraphs 17 or 18 of this Lease, then TENANT shall pay over to LANDLORD all such proceeds. TENANT and LANDLORD shall each provide the other with evidence of such insurance.

14. CONTENTS INSURANCE. TENANT acknowledges that its use of the Premises is for its communication center and agrees to insure all of its property on said Premises and to hold LANDLORD harmless for any liability or damage to the contents of said property in the Premises leased by TENANT.

15. UTILITIES. TENANT shall pay for its own electricity and gas, and will cause separate meters to be installed for the Premises. TENANT shall reimburse LANDLORD for garbage, sewer user and water charges on a prorated basis, as follows: TENANT to pay one-third, LANDLORD to pay two-thirds.

16. <u>GARNISHMENT</u>.   This lease and the interest of the TENANT hereunder shall not, without the written consent of LANDLORD first had and obtained, be subject to garnishment or sale under execution in any suit or proceedings which may be brought against or by TENANT.

17. <u>TOTAL DESTRUCTION</u>.   In the event the demised Premises shall be wholly destroyed by fire or other unavoidable casualty, the lease shall terminate as of the date of such destruction, and TENANT shall have no further obligation to pay rent hereunder.

18. <u>PARTIAL DESTRUCTION</u>.   In case the structure shall be more than 50% destroyed by the elements, fire, or other causes, either LANDLORD or TENANT may cancel this lease within thirty (30) days after such destruction, and in the event either party exercises such option, this lease shall thereupon cease, and TENANT shall surrender possession of the Premises.  But in the event neither LANDLORD nor TENANT elect to cancel within thirty (30) days from and after more than 50% destruction of the building, or in the event the building is destroyed 50% or less, LANDLORD at once shall proceed to make repairs necessary to put the building in its former condition and said lease shall not terminate, but during the time in which such repairs are being made, no rent shall be payable from the date of the partial destruction until the Premises are made full tenantable, except for such parts of said Premises as may be then used and occupied by TENANT, and in which case the rental therefor shall be adjusted between the parties hereto.

19. <u>REMEDIES</u>.   All rights and remedies of LANDLORD herein enumerated shall be cumulative, and none shall exclude any other right or remedy allowed by law.

(a)   This lease and all the rights of TENANT hereunder shall, at the option of LANDLORD, cease and terminate upon TENANT being by any court adjudged bankrupt or insolvent, or upon TENANT making an assignment for the benefit of creditors; it being agreed that such adjudication in bankruptcy or insolvency or assignment for the benefit of creditors shall constitute a breach of this lease, and thereupon the LANDLORD shall be entitled to recover

damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term hereof, less the fair rental value of the Premises for the residue of said term.

(b)  If the rent above reserved, or any part thereof, shall be behind or unpaid on the day whereon the same ought to be paid as aforesaid, or if default shall be made in any of the covenants and agreements herein contained to be kept by TENANT, and if said default shall be permitted by TENANT to continue five (5) days after receipt by TENANT from LANDLORD of a written notice of said default, it shall and may be lawful for the said LANDLORD to sue for said overdue rent or for damages due to said default, or at LANDLORD'S option, to declare said term ended, and into the said Premises, or any part thereof, in the name of the whole to re-enter, and the TENANT or any other person or persons occupying in or upon the same to expel, remove and put out, using such force as may be necessary in so doing, and the said Premises again repossess and enjoy as in the fist and former estate; and in such case, or in case of termination of this lease in any way, the TENANT does hereby covenant and agree to surrender and deliver up said above-described Premises and property, peaceably, to LANDLORD, immediately upon the termination of said term as aforesaid, and if TENANT shall remain in possession of the same after such default, or after the termination of this lease in any of the ways above named, TENANT shall be deemed guilty of a forcible detainer of said Premises under the statutes, and shall be subject to all of the conditions and provisions above named, and to eviction and removal as above stated.

(c)  In the event TENANT shall fail to pay rent, or default in any of the covenants and agreements of this lease as above provided, and if said default shall continue thirty (30) days after receipt by TENANT from LANDLORD of a written notice of said default, this shall constitute a breach of the lease, and it shall and may be lawful for LANDLORD, in addition to other remedies herein provided for or provided by law, either (1) to re-lease the Premises as agent of TENANT, applying all net rent received, after necessary expenses, to the rent to be paid

by TENANT, and in that event TENANT shall be and remain liable to LANDLORD for the excess of rent, if any, which is due pursuant to this lease, or (2) to recover damages for such breach in an amount equal to the amount of the rent reserved in this lease for the residue of the term thereof, less the fair rental value of the Premises for the residue of said term.

20. CONDEMNATION. In the event a suit for condemnation is imminent, the parties agree to use their best efforts to reach an agreement and to convey their respective interests to the authority which would otherwise condemn without legal action, and in that event the estate so conveyed shall be treated as though taken by eminent domain. In the event of eminent domain proceedings, the parties agree to cooperate in proving the value of the Premises and the damages sustained. In the event of a voluntary conveyance as above set forth, or in the event of condemnation, either total or partial, the parties agree to use their best efforts to agree with reference to all problems raised, including (but not exclusively) the following: the abatement of rent, the apportionment of damages, the restoration of the remaining uncondemned portion of the Premises, and the right of TENANT to cancel the lease due to partial condemnation. If the parties cannot agree concerning any one or more of the problems raised, the same shall be settled by arbitration. Each of the parties shall choose one arbitrator and said two arbitrators shall choose a third. The arbitrators shall be experienced, reputable realtors in the county in which the Premises are located and shall be competent and impartial and of good moral and business reputation. They shall be directed to render a report in writing signed by each of them within ten (10) days. The expense of the arbitration shall be borne equally by the parties, and the report of the arbitrators shall be binding upon both LANDLORD and TENANT. In the event a portion of the Premises herein demised is condemned, and which such taking renders the balance of the Premises unusable by TENANT for the purposes herein demised, TENANT shall have the right to cancel this lease at such time as said Premises are so taken.

21. NOTICES. All notices required under this lease shall be deemed to by properly served if delivered in writing personally or sent by registered mail to the LANDLORD at the last

address where rent was paid, or to the TENANT, before occupancy of the demised Premises, addressed to 400 Margaret Street, Pekin, Illinois 61554, and after occupancy of the demised Premises, to the demised Premises. Date of service of a notice served by mail shall be the date on which such notice is received.

22. POSSESSION UPON TERMINATION. The TENANT covenants and agrees that it will yield up said Premises to said LANDLORD at the expiration of the lease demised, whether by forfeiture or by the expiration of time, in as good condition as when the same was entered into and taken possession of by TENANT, loss by fire, act of God, or ordinary wear and tear excepted.

23. ACCESS BY LANDLORD. The LANDLORD reserves the right to have reasonable access at reasonable hours upon reasonable notice for itself, its agents or employees, to the Premises hereby leased, for the purpose of making any needed repairs to said Premises, and it is further agreed that said TENANT shall permit said LANDLORD, its agents, attorneys or assigns, to put the usual notice of "To Let" or "For Sale" upon said Premises during the three (3) months next preceding the expiration of this lease.

24. ACCESS BY TENANT. The LANDLORD shall provide to TENANT access to the Premises at all times, day or night, twenty-four fours per day, three hundred sixty-five days per year.

25. TIME OF ESSENCE. It is further agreed that time shall be of the essence of all covenants and payments to be made under this lease.

26. QUIET ENJOYMENT. Tenant, upon the payment of the rent herein reserved and upon TENANT'S performance of all of the terms of this lease, shall at all times during the lease term and during any extension or renewal term, peaceably and quietly enjoy the leased Premises without any disturbance from the LANDLORD, or from any others claiming through LANDLORD.

27. **HOLD HARMLESS**. TENANT will at all times defend, indemnify and save and keep harmless LANDLORD against and from any and all loss, costs damage, expense or attorney's fees arising out of the conduct of its business on said Premises.

28. **BINDING UPON SUCCESSORS**. The covenants of this lease shall be obligatory upon and shall extend to the successors and assigns of LANDLORD and the successors and assigns of TENANT. TENANT shall, however, not assign this lease or sublet the Premises or any portion of the same without first obtaining the written consent of LANDLORD.

IN WITNESS WHEREOF, the undersigned have executed this lease the day and year first above written.

TENANT:

TAZEWELL/PEKIN CONSOLIDATED COMMUNICATION CENTER, an Illinois not-for-profit corporation

By: _Steven J. Thompson_
Its: _Director_

ATTEST:

By: _Jammie J. Conover_
Its: _Operations Manager_

LANDLORD:

CITY OF PEKIN, an Illinois municipal corporation

By: _R. David Tebben_
Its: Mayor

ATTEST:

By: _Sue V. McMillan_
Its: City Clerk

-9-