# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

## JUDGMENT - WITH ORAL ARGUMENT

CERTIFIED COPY

s/ Deputy Clerk

Date: July 31, 2008

BEFORE:   JOEL M. FLAUM, Circuit Judge

MICHAEL S. KANNE, Circuit Judge

ILANA DIAMOND ROVNER, Circuit Judge

FILED
AUG 25 2008
PAMELA E. ROBINSON, CLERK
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

No. 07-1118

DENISE N. MOLDENHAUER,
       Plaintiff - Appellant
  v.

TAZEWELL-PEKIN CONSOLIDATED
COMMUNICATIONS CENTER, et al.,
       Defendants - Appellees

Appeal from the United States District Court for the
Central District of Illinois
No. 04 C 1169, Michael M. Mihm, Judge

    The judgment of the District Court is AFFIRMED, with costs,
in accordance with the decision of this court entered on this date.


(1061-110393)

A True Copy:
Teste:
s/ Deputy Clerk
Clerk of the United States
Court of Appeals for the
Seventh Circuit

CERTIFIED COPY

# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-1118

DENISE N. MOLDENHAUER,

                        *Plaintiff-Appellant*,

v.

TAZEWELL-PEKIN CONSOLIDATED
COMMUNICATIONS CENTER, *et al.*,

                        *Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 04-1169—**Michael M. Mihm**, *Judge*.

ARGUED NOVEMBER 6, 2007—DECIDED JULY 31, 2008

Before FLAUM, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*. We are asked to consider one issue in this appeal: what qualifies as a joint-employment relationship under the Family Medical Leave Act (FMLA)? Denise Moldenhauer worked as a dispatcher for the Tazewell-Pekin Consolidated Communications Center (Tazcom), a non-profit entity providing emergency 911 communications, until she was terminated for excessive absenteeism resulting from her chronic pancreatitis. She brought suit, claiming Tazcom, the City of Pekin, and Tazewell County were joint employers that together

retaliated against her for attempting to exercise her rights under the FMLA. *See* 29 U.S.C. § 2612(a)(1). The district court granted defendants' motion for summary judgment, concluding that Tazcom, Pekin, and Tazewell were not joint employers and that Tazcom alone was too small to qualify as an employer under the FMLA. We decline to extend joint-employer liability in this case because (1) there is no evidence that Pekin and Tazewell exhibited control over the work or working conditions of Moldenhauer, (2) Tazcom was not formed to evade the requirements of the FMLA, and (3) the policies of the small-employer exception are furthered by limiting employer liability in this case. Therefore, we affirm.

## I. Background

The facts are construed in the light most favorable to Moldenhauer. *See Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). Moldenhauer began working at Tazcom in August 1983 as a dispatch telecommunicator. In 1991 she was diagnosed with chronic pancreatitis causing acute flare-ups that required pain medication, bed rest, and a restricted diet. Initially, these flare-ups caused her to miss only a limited amount of work, but as her illness progressed so did the amount of work she was forced to miss. The Tazcom Executive Director, Steve Thompson, first voiced concern regarding Moldenhauer's absenteeism in 1998. One year later he wrote a letter informing her that she was eligible for up to twelve weeks of leave under the FMLA if her health problems persisted.

Moldenhauer's chronic pancreatitis continued to cause her to miss work, and in May of 2002 she notified Thomp-

son in writing that she wished to invoke her rights under the FMLA. Tazcom disputes whether Thompson ever received this notification. But, in any event, Moldenhauer claims that Thompson denied her request for FMLA leave, and she then filed a complaint with the U.S. Department of Labor (U.S. DOL). An investigation culminated in a preliminary letter from the U.S. DOL labeling Tazcom, Pekin, and Tazewell joint employers under the FMLA.

In January 2003 Thompson suspended Moldenhauer for twenty days due to her absenteeism, her third suspension for missing work. After returning from her suspension, she again missed work, and Thompson fired her in April 2003 after notifying the Tazcom Executive Board of his decision.

Moldenhauer brought suit in district court, alleging many different causes of action. As is relevant here, she claimed that Tazcom, Pekin, and Tazewell retaliated against her for trying to exercise her rights under the FMLA. The district court granted summary judgment in favor of the defendants, reasoning that Pekin and Tazewell did not have control over Tazcom employees and therefore were not joint employers of Moldenhauer. Summary judgment was appropriate in favor of Tazcom, the court reasoned, because it had fewer than fifty employees and was therefore exempt from the FMLA.

Because the court's decision turned on the amount of control Pekin and Tazewell exercised over Moldenhauer, it is important to understand the relationship between Pekin, Tazewell, and Tazcom. Pekin and Tazewell created Tazcom in 1976 as a non-profit corporation in Illinois to provide emergency 911 communications at a more affordable rate. Tazcom serves thirty-eight public and private entities.

4                                                    No. 07-1118

Tazcom was established as a independent entity, but, as its name suggests, it does a great deal of business with Pekin and Tazewell. All of Tazcom's clients pay for their emergency services. But the bulk of Tazcom's operating budget is derived from Pekin and Tazewell, who are the largest users of Tazcom's services. Tazcom also rents office space from Pekin, and in order to enter the building, Tazcom's employees were issued Pekin identification badges. It is unclear from the record whether Tazcom paid rent prior to 2001, but the parties agree that Tazcom regularly paid Pekin rent since 2001.

Tazcom also contracted with Pekin for the provision of various services. This contract was embodied in the "Letter of Understanding," dated May 1, 1996, which explained, "Employees of the Tazewell/Pekin Consolidated Communications Center shall be considered employees of the City of Pekin for the purposes of providing Payroll, Health Care Insurance, Workers Compensation Insurance, and Illinois Municipal Retirement." Tazcom paid Pekin $4,974 per year in exchange for payroll services. According to Pekin, technological limitations required that all Tazcom employees be labeled as Pekin employees to provide payroll services. Pekin was also listed as Moldenhauer's employer on many of her employment forms, including her W-2s, wage garnishment form, and direct deposit form. Additionally, as detailed in the Letter of Understanding, when Moldenhauer participated in the Illinois Municipal Retirement Fund she did so as an employee of Pekin, and the Tazcom sexual harassment policy listed a Pekin city employee as the reporting official for potential claims. Finally, prior to 2002, Tazcom contracted with Pekin for health and life insurance providers, although it has since procured its own providers.

No. 07-1118                                    5

As for the day-to-day operations of Tazcom, the parties dispute what level of control Pekin and Tazewell exercised over Tazcom. The Tazcom bylaws stipulate that a board of directors be appointed consisting of four individuals: the Sheriff of Tazewell, the Chairperson of the Tazewell Board of Supervisors, the Mayor of Pekin, and the Pekin Chief of Police, all of whom have the choice of serving personally or designating an alternate to serve in their place. But the board appoints a separate Executive Director to manage the day-to-day operations, including the hiring and firing of employees and creation of a preliminary budget. During all periods relevant to this litigation, Steven Thompson served as the Executive Director. Thompson is not affiliated with Pekin or Tazewell in any way and is only employed by Tazcom.

Based on these facts, Moldenhauer appeals the district court's grant of summary judgment, arguing that Pekin, Tazewell, and Tazcom are joint employers and therefore liable under the FMLA.

## II. Analysis

We review a grant of summary judgment de novo, construing all facts and inferences in favor of the non-moving party. *See Lewis v. Sch. Dist. #70*, 523 F.3d 730, 740 (7th Cir. 2008). Summary judgment is appropriate where there is no genuine issue of material fact. *See Breneisen v. Motorola, Inc.*, 512 F.3d 972, 977 (7th Cir. 2008). The majority of the facts in this case are undisputed, and therefore the key issue turns on whether, under these facts, Tazcom, Pekin, and Tazewell were joint employers under the FMLA.

1:04-cv-01169-MMM-JAG    # 98    Page 7 of 14

1:04-cv-01169-MMM-JAG    # 98    Page 7 of 14

6                                                              No. 07-1118

The FMLA provides eligible employees up to twelve weeks of unpaid leave in any twelve-month period for personal medical conditions or to attend to familial obligations, such as caring for a loved one who has a serious health condition. 29 U.S.C. §§ 2612, 2615. The Act makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]," 29 U.S.C. § 2615, and the Act provides for a private right of enforcement, 29 U.S.C. § 2617(a). The primary aim of the FMLA is "to balance the demands of the workplace with the needs of families . . . in a manner that accommodates the legitimate interests of employers . . . ." 29 U.S.C. § 2601(b)(1) & (3). To effectuate this aim, Congress exempted "small employers," defined as employers with fewer than fifty employees. 29 U.S.C. § 2611(4)(A).

The Act itself does not address situations where joint-employer liability will be imposed. *See, e.g., Moreau v. Air*

No. 07-1118                                                    7

> simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> > (1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
> >
> > (2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
> >
> > (3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 825.106(a).

But this regulation, which focuses on whether multiple entities exercise "some control" over the employee, does not answer the question before us and does not even provide much guidance in determining the parameters of what constitutes a joint-employment relationship. And although this court has yet to address the scope of joint-employer liability under the FMLA, the other circuits that have addressed the issue have looked at the employment situation as a whole, analyzing the *amount* of control the alleged joint employer had over employees. *See Grace v. USCAR*, 521 F.3d 655, 665-69 (6th Cir. 2008); *Moreau*, 343 F.3d at 1188-90; *Morrison v. Magic Carpet Aviation*, 383 F.3d 1253, 1257-58 (11th Cir. 2004). In assessing the amount of control an employer exercised over

8                                              No. 07-1118

an employee, other courts have addressed various factors such as whether the alleged employer "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records." *Moreau*, 343 F.3d at 1183 (internal quotation marks and citation omitted). Moldenhauer asks us to adopt a similar list of factors that are relevant to the determination of a joint-employer relationship. But we decline to so limit our review in this case or subsequent cases. Although these factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the *only* relevant factors, or even the most important.

Rather, we hold generally that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case. *See Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007); 29 C.F.R. § 825.106. Although this circuit has yet to address joint-employer liability under the FMLA, in *Reyes* we held that both the farm that employed migrant workers and the recruiter who placed the workers at the farm were joint employers under the Fair Labor Standards Act because both controlled the workers' daily activities and working conditions. *Id.* at 404-08. The joint-employer regulation in the FLSA mirrors that in the FMLA, compare 29 C.F.R. § 825.106(a) *with* 29 C.F.R. § 791.2(b), and thus it makes sense for us to use this standard to govern the FMLA.

Our application of this test to Tazcom's relationship with Pekin is guided by the Sixth Circuit's opinion in

No. 07-1118                                                  9

*Grace v. USCAR*. In *Grace* a staffing agency assigned the plaintiff to work at a design firm. *Grace*, 521 F.3d at 659-61. At all times during the plaintiff's employment she remained on contract with the staffing agency, receiving her pay and benefits from it. *Id.* at 660, 667. But the design firm supervised the plaintiff's day-to-day activities and determined her salary and hours. *Id.* at 667. The Sixth Circuit analyzed the totality of the plaintiff's employment situation and found that a joint-employment relationship existed because both employers maintained control over the employee. *Id.* In contrast, in *Moreau v. Air France*, the Ninth Circuit held that an airline that contracted for the provision of ground services at the airport was not a joint employer of the plaintiff because the airline did not maintain any authority to control the workers, i.e., it could not hire or fire employees, determine salaries, or direct day-to-day activities. *See* 343 F.3d at 1190. Instead, the airline only evaluated whether the contracted-for services were supplied satisfactorily. *See id.*

Additionally, *Reyes*, *Grace*, and *Moreau* square perfectly with the U.S. DOL's specification that "joint employment will ordinarily be found to exist when a temporary or leasing agency supplies employees to a second employer." 29 C.F.R. § 825.106(b). In *Reyes* and *Grace*, the primary employer placed workers with the alleged secondary employer, but both employers maintained significant control over the employee and were thus found to be joint employers. In *Moreau*, the alleged secondary employer simply contracted for services provided by the primary employer—it had no actual control over the employee—and no joint-employment relationship was found to exist.

Turning to the facts in this case, Moldenhauer stresses the "laundry list" of services that Tazcom received from

10                          No. 07-1118

Pekin, including payroll and insurance providers. But, as in *Moreau*, Tazcom contracted with Pekin for the provision of those services, which is insufficient to establish a joint-employment relationship. And although Tazewell is named as a defendant, Moldenhauer does not advance any arguments or evidence that would suggest that Tazewell performed the functions of an employer. Noticeably Moldenhauer cannot point to one instance of either Pekin or Tazewell hiring a Tazcom employee, determining the working conditions of the dispatchers (such as by specifying the number of dispatchers working at any given time and thus affecting the workload of each dispatcher), or deciding the compensation for a Tazcom dispatcher. Although it is true that Executive Director Thompson contacted the Tazcom board when he fired Moldenhauer, what is key is that he did not first contact Pekin or Tazewell for permission. And although the letter from the U.S. DOL stating that Pekin, Tazewell, and Tazcom were joint employers of Moldenhauer may be persuasive, it is not conclusive. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Sehie v. City of Aurora*, 432 F.3d 749, 753 (7th Cir. 2005). The U.S. DOL opinion letter cannot govern in this case because, unlike in *Grace* and *Reyes*, neither Pekin nor Tazewell exercised any control over Moldenhauer's employment, and thus, in the totality of the circumstances, neither can be considered joint employers under the FMLA.

This holding is consistent with the purpose behind the small-employer exception. The reason small employers are exempted from compliance with the FMLA is because "[f]irms too tiny to achieve the realizable economies of scale or scope in their industry will go under unless they can integrate some of their operations with those of other companies, whether by contract or owner-

ship." *Papa v. Katy Indus., Inc.*, 166 F.3d 937, 942 (7th Cir. 1999). Tazcom contracted with Pekin to use its payroll and benefits processing precisely for these reasons—providing payroll and benefits on its own may have proved too costly for such a small employer. Tazcom employs only twenty-three individuals who provide emergency dispatch services twenty-four hours a day, seven days a week. This is exactly the type of business that is unable to absorb an employee's twelve-week absence for FMLA leave. And there is no evidence in the record that either Pekin or Tazewell could supply an employee to Tazcom to cover such an absence.

Finally, we note that we will not tolerate an organization dividing itself into smaller entities with fewer than the statutory minimum number of employees for the express purpose of avoiding FMLA obligations. *See Papa*, 966 F.3d at 941. And where such evidence exists, we will not hesitate to deem these entities joint employers for purposes of the FMLA. But here there is absolutely no evidence that Pekin and Tazewell created Tazcom in order to avoid their FMLA responsibilities. Indeed, Tazcom was created in 1976, seven years before the FMLA was enacted. Moldenhauer stresses that Tazcom's board of directors was filled with officials from Pekin and Tazewell. But never does Moldenhauer point to any evidence that these individuals acted as *representatives* of Pekin or Tazewell. There are no allegations that any of the directors, when acting in their capacity as a Tazcom director, sought to advocate for Pekin or Tazewell. Moldenhauer seems to suggest that because these leaders sat on the Tazcom board, it is implicit that Pekin and Tazewell were joint employers of Tazcom. But *many* government officials sit on *many* boards, and this fact alone cannot suffice to justify the extension of joint-employer liability.

### III. Conclusion

Consistent with the purpose of the FMLA small-employer exemption, we hold that Pekin and Tazewell are not joint employers of Moldenhauer. The parties agree that, because Tazcom has fewer than fifty employees, it cannot be held liable under the FMLA. And because Moldenhauer expressly withdrew her claims against the individual defendants, the judgment of the district court is AFFIRMED in all respects.

USCA-02-C-0072—7-31-08

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

NOTICE OF ISSUANCE OF MANDATE

DATE:   August 22, 2008

TO:     Pamela E. Robinson
        United States District Court
        Central District of Illinois
        Room 309
        100 N.E. Monroe Street
        Peoria, IL  61602
        USA

FROM:   Clerk of the Court

RE:     07-1118
        Moldenhauer, Denise v. Tazewell-Pekin Con
        04 C 1169, Michael M. Mihm, Judge

        Herewith is the mandate of this court in this appeal, along
        with the Bill of Costs, if any.  A certified copy of the
        opinion/order of the court and judgment, if any, and any
        direction as to costs shall constitute the mandate.

        [ ] No record filed
        [X] Original record on appeal consisting of:
ENCLOSED:                                    TO BE RETURNED AT LATER DATE:
        [1]     Volumes of pleadings                 [ ]
        [5]     Volumes of loose pleadings           [ ]
        [ ]     Volumes of transcripts               [ ]
        [ ]     Volumes of exhibits                  [ ]
        [ ]     Volumes of depositions               [ ]
        [ ]     In Camera material                   [ ]
        [ ]     Other_____ [ ]

                Record being retained for use        [ ]
                in Appeal No. _____

        Copies of this notice sent to:    Counsel of record
        [ ]     United States Marshal
        [ ]     United States Probation Office

NOTE TO COUNSEL:
        If any physical and large documentary exhibits have been filed in
        the above-entitled cause, they are to be withdrawn ten days from the
        date of this notice.  Exhibits not withdrawn during this period will
        be disposed of.

        Please acknowledge receipt of these documents on the enclosed copy
        of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        Received above mandate and record, if any, from the Clerk, U.S.
        Court of Appeals for the Seventh Circuit.
Date: _____  _____